**ABACAN TECHNICAL SERVICES LIMITED, Appellant,**

v.

**GLOBAL MARINE INTERNATIONAL SERVICES CORPORATION, Appellee.**

No. 01–98–01336–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 27, 1999.

Michael D. Hopkins, Alfredo R. Perez, Houston, for appellant.

Stacy Lee Williams, Marion E. McDaniel, Jr., Houston, for appellee.

Panel consists of Justices MIRABAL, TAFT, and NUCHIA.

## OPINION

TIM TAFT, Justice.

Global Marine International Services Corporation sued Abacan Technical Services Limited to enforce payments due under the terms of a negotiated settlement agreement. Despite having agreed in the settlement that any suit to enforce payments would be brought in Texas, Abacan contested personal jurisdiction by special appearance. Tex.R. Civ. P. 120a. Abacan now challenges the denial of the special appearance in this accelerated, interlocutory appeal. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(7) (Vernon Supp.1999). We address whether the trial court properly relied on the forum selection clause of the settlement agreement in denying the special appearance. We affirm.

### Facts and Procedural Background

Abacan and Global Marine are nonresident corporations organized under the laws of the Commonwealth of the Bahamas. Abacan owns several offshore production "blocks" off the western coast of

Africa. Global Marine charters equipment for offshore oil and gas exploration to companies like Abacan. Global Marine has offices in London, England, where its vice president, Freeman Luke Matthews, resides. Global Marine's parent company, Global Marine, Inc., and an affiliate, Global Marine Baltic, Inc., have headquarters in Houston, Texas. Abacan's principal office is in Lagos, Nigeria. Abacan's president is Wade Cherwayko, a Canadian citizen. Abacan's parent company, Abacan Resource Company, has an office in Houston.

**1. Leasing Contract for "Glomar Adriatic X" Rig**

In March 1997, Global Marine, Abacan, and two Delaware corporations executed a contract for the lease of an offshore drilling rig known as the Glomar Adriatic X. The two additional corporations were Global Marine's affiliate, Global Marine Baltic, Inc., and United Meridian Corporation Equatorial Guinea Corporation. Pursuant to the terms of a separate offshore drilling contract between Global Marine and United Meridian, Global Marine assigned that drilling contract to Abacan. Under the assignment, Abacan was to use the Glomar Adriatic X rig to drill five wells. The leasing contract was for a minimum 120–day term, with a set day rate of $45,000 per day. This contract included a seven-point arbitration clause that required binding arbitration in Houston, Texas, for any dispute affecting any party. In addition, Abacan expressly waived any immunities to service of process, jurisdiction, or execution under these provisions of the leasing contract.

**2. Leasing Contract—Breach and Resulting Settlement**

A dispute arose in 1997, when Abacan defaulted on payments. Pursuant to provisions of the leasing contract, Global Marine sought arbitration to collect past due lease payments. James L. McCullough, general counsel and vice president of Global Marine Inc., Global Marine's parent company, issued a demand for arbitration to Abacan through its parent company in Houston and through Abacan in Lagos. McCullough and Abacan's counsel in Calgary, Alberta, Canada, successfully negotiated a settlement without recourse to formal arbitration. The parties executed a release and settlement agreement in February 1998. President Cherwayko executed the settlement agreement for Abacan. Global Marine's vice president, Matthews, executed the agreement in London. McCullough executed the agreement in Houston on behalf of Global Marine Baltic, Inc.

The settlement agreement required Abacan to pay a total of $2,313,148.80 through a series of payments. Abacan was to wire-transfer $350,000 to Global Marine immediately, and pay $134,420.07 monthly from April 1998 until March 1999. Abacan wired the $350,000, but later defaulted. The default triggered the forum-selection clause of the settlement agreement, which follows:

4. *Suit Following Non–Conformance:*

   a. If Abacan fails to make timely payment ... [Global Marine] and [Global Marine Baltic] may pursue a breach of contract claim in either Texas state court or in the United States District Court for the Southern District of Texas, Houston Division, or in any jurisdiction which complies with the requirements of sub-paragraph (b) below.

   b. ***Abacan expressly waives any objection and right to contest subject matter jurisdiction, personal jurisdiction, and venue of either a Texas state court or the United States District Court for the Southern District of Texas, Houston Division to hear [Global Marine's] or [Global Marine Baltic's] claims that are related to Abacan's non-conformance or breach of this Agreement or [Global Marine's] or [Global Ma-***

*rine Baltic's] collection efforts for breach of the agreement.*

(All emphasis in original.) The settlement agreement provided for enforcement under Texas law. In addition, Abacan agreed to accept service of process through its counsel in Calgary, Alberta, Canada.

### 3. Settlement Agreement—Breach and Rule 120a Appearance

Global Marine filed this action in April 1998, claiming that Abacan had made only one payment and refused to make any more. Global Marine recited Abacan's consent to service of process through counsel, and premised jurisdiction on the forum-selection clause excerpted above. Abacan answered, subject to a special appearance to contest jurisdiction. The special appearance virtually ignored the forum-selection clause, except to claim it was "not dispositive." Instead, Abacan interjected traditional due-process challenges to exercise of long-arm jurisdiction over a nonresident under Section 17.042 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). Abacan's brief supporting the special appearance, and the evidence attached to the brief, expanded on these arguments and again avoided the issue of Abacan's having expressly agreed to Texas jurisdiction in the settlement agreement.[1]

Global Marine's response charged Abacan with filing the special appearance as a ploy to avoid payment. Global Marine argued that forum-selection clauses are prima facie enforceable and valid in Texas. Global Marine offered evidence rebutting Abacan's implied claim that enforcement of the forum-selection clause would cause undue inconvenience, as well as evidence showing that Abacan was in financial crisis and attempting to avoid its obligations. This evidence demonstrated the following:

- Global Marine, Inc., Global Marine's parent company, has its headquarters in Houston.

- McCullough is vice president and general counsel for Global Marine, Inc. and is responsible for all legal matters affecting Global Marine.

- On behalf of Global Marine Baltic, Inc., McCullough executed the settlement agreement that resulted from Global Marine's request for arbitration under the parties' original leasing contract.

- McCullough was responsible for monitoring Abacan's payments under the settlement agreement. In late spring 1998, he met in Houston with the president of Abacan's parent company, Abacan Resource Company, to discuss Abacan's default. McCullough learned that Abacan's financial difficulties prevented any payment.

- The president of Abacan's parent company sent form letters to creditors in mid-May to explain Abacan's financial difficulties.

- No need existed to obtain the witnesses and evidence that Abacan referred to in support of its special appearance, because the only issue to be decided is Abacan's default of its negotiated agreement.

The record on appeal consists of Abacan's sworn special appearance pleading and supporting brief, Global Marine's response, and the affidavits and documentary evidence the parties offered in support of those documents. The trial court denied the special appearance after considering those documents. Although authorized by rule 28.1 of the Rules of Appellate Procedure, Abacan did not request findings of fact and conclusions of law. Tex. R.App. P. 28.1. All proceedings in the trial court became stayed once Abacan perfected this interlocutory appeal of the trial court's order.[2] Tex. Civ. Prac. & Rem.Code Ann. § 51.014(b) (Vernon Supp.1999).

---

**1.** The brief Abacan submitted to the trial court contains 25 numbered paragraphs. Abacan addressed the forum-selection clause in only two of these paragraphs, and then only marginally.

**2.** These include Abacan's motion to dismiss for forum non conveniens, filed subject to the

## Forum–Selection Clause

Abacan's first issue challenges Global Marine's reliance on the forum-selection clause. Abacan claims the trial court erred in denying the special appearance because the forum-selection clause is unreasonable as a matter of law.

To issue a binding judgment against a nonresident, a Texas court must have both subject-matter and personal jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). Personal jurisdiction presents a question of law. *See James v. Illinois Cent. R.R.*, 965 S.W.2d 594, 596 (Tex.App.—Houston [1st Dist.] 1998, no pet.). Exercise of personal jurisdiction must comport with the requirements of the due process clause of the Fourteenth Amendment of the federal constitution and the Texas long-arm statute. *CSR Ltd.*, 925 S.W.2d at 594; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990); Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

Personal jurisdiction is a waivable right. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 703–05, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). A forum-selection clause is one of several ways in which a litigant may expressly or impliedly consent to personal jurisdiction. *Burger King*, 471 U.S. at 473 n. 14, 105 S.Ct. at 2182 n. 14; *Insurance Co. of Ir.*, 456 U.S at 703–05, 102 S.Ct. at 2105; *see National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964); *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 415 & n. 9 (Tex.App.—Houston [14th Dist.] 1997, no pet.).

### 1. Special Appearance

special appearance, and Global Marine's motion for summary judgment, which the trial

Global Marine premised jurisdiction on Abacan's having agreed to submit to Texas jurisdiction through the forum-selection clause in the settlement agreement negotiated two months before Global Marine filed this action. Rule 120a of the Rules of Civil Procedure allows a party to appear specially, without making a general appearance, to object to the jurisdiction of the court over the party, or the party's property, "on the ground that such party or property is not amenable to process issued by the courts of this State." Tex.R. Civ. P. 120a. The words "not amenable to process" mean that the special appearance is available solely to establish that the Texas court cannot validly obtain jurisdiction under the federal and state constitutions and the applicable state statues. *GFTA Trendanalysen B.G.A. Herrdum GMBH & Co. v. Varme, K.G.*, 991 S.W.2d 785 (1999); *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202 (Tex.1985).

On appeal from a special appearance, we review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Kawasaki Steel*, 699 S.W.2d 199, at 202–03 (Tex.1985); *James*, 965 S.W.2d at 596.

### 2. M/S Bremen

When the parties to an arms-length, private, international transaction freely negotiate to include a forum-selection clause in an agreement, the clause is prima facie valid and enforceable unless the opponent establishes a compelling reason not to enforce it. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10–11, 15, 92 S.Ct. 1907, 1913, 1916, 32 L.Ed.2d 513 (1972). In *M/S Bremen*, the Supreme Court vacated jurisdiction assumed by the United States District Court for the Middle District of Florida, after Zapata sued for storm damage to its oil rig, which was under tow through international waters

court had continued on Abacan's motion.

from Louisiana to Italy. 407 U.S. at 3–4, 92 S.Ct. at 1910. In instructing the district court to give effect to the forum-selection clause in the parties' contract, which designated the London Court of Justice as the forum for all disputes, the court held that the interests of expanding trade and commerce warranted giving effect to the parties' agreement to choose a particular forum for disputes, and thus discredited long-settled precedent against enforcing such clauses. 407 U.S. at 9–10, 15, 92 S.Ct. at 1912–13, 1916.

■ The Supreme Court instructed the district court to enforce the forum-selection clause unless Zapata made a strong showing that the clause it agreed to should be set aside. 407 U.S. at 15, 92 S.Ct. at 1916. The burden was on Zapata, not the party asserting jurisdiction, to defeat the jurisdiction it had agreed to through the forum-selection clause. *Id.* The district court was instructed to enforce the forum-selection clause on remand unless: (1) there was a strongly contravening precedent or statute in the forum selected; (2) Zapata presented clear evidence that enforcement would be unreasonable or unjust, to the extent it was effectively denied its day in court because of grave difficulty and inconvenience; or (3) Zapata demonstrated that the clause was invalid because of fraud or overreaching. 407 U.S. at 15–19, 92 S.Ct. at 1916–17. The party claiming unfairness has a "heavy burden of proof." 407 U.S. at 17, 92 S.Ct. at 1917.

Unless the challenger defeats the forum-selection clause by demonstrating one or more of *M/S Bremen* factors, enforcement of the clause does not offend due process. *Burger King,* 471 U.S. at 473 n. 14, 105 S.Ct. at 2182 n. 14; *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590–94, 111 S.Ct. 1522, 1526–28, 113 L.Ed.2d 622 (1991) (applying*M/S Bremen* rule to nonnegotiated international contract); *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 518–19, 94 S.Ct. 2449, 2456–57, 41 L.Ed.2d 270 (1974) (applying *M/S Bre-*

*men* rule to agreement to arbitrate in a particular forum).

### 3. Prima Facie Validity Undefeated

■ Abacan did not meet its heavy burden to defeat the forum-selection clause it had agreed to in executing its settlement agreement with Global Marine. There is no claim of fraud or overreaching and we find no evidence of either. Nor is there any contravening statute or precedent. Rather, the record demonstrates precisely the circumstances that so strongly motivated the Supreme Court to uphold the forum-selection clause in *M/S Bremen,* specifically: an arms-length, international agreement, among experienced and sophisticated business interests, to enforce disputes arising under that agreement in a particular forum, in this case, Texas. *See* 407 U.S. at 12, 92 S.Ct. at 1914.

■ While dismissing the forum-selection clause as "non-dispositive" in the trial court, Abacan has bootstrapped its due-process challenge into an appellate complaint that the clause is unreasonable as a matter of law. Abacan did not preserve this complaint because Abacan did not raise it in the trial court. Tex.R.App. P. 33.1(a).

Even if Abacan had preserved this complaint, its evidence suggests mere inconvenience, and a preference to decide the dispute elsewhere than in Texas. Neither is sufficient to meet the evidentiary showing of serious inconvenience, to the degree of depriving Abacan of its day in court. *See Carnival Cruise Lines,* 499 U.S. at 594, 111 S.Ct. at 1528; *M/S Bremen,* 407 U.S. at 17, 92 S.Ct. at 1917. Moreover, all of Abacan's claims conflict with its having agreed to submit its failure to pay to a Texas court.

Global Marine's evidence further demonstrates that Abacan's claimed inconvenience does not apply. This is a simple suit to enforce a twice-negotiated obligation, brought in a forum to which Abacan affirmatively agreed and where Abacan's parent company has an office and is

assisting to work out Abacan's financial difficulties. The record before us shows no basis for producing faraway witnesses and extensive documents.

Abacan's sole acknowledgment of the forum-selection clause is to argue that its consent was "not dispositive" under this Court's decision in *James*, in which a majority of this Court rejected an injured switchman's claim that Illinois Central had consented to Texas jurisdiction under the Texas long-arm statute, TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997), by defending other, unrelated lawsuits in Harris County. *James*, 965 S.W.2d at 599. We further held that asserting personal jurisdiction over the railroad would offend concepts of fair play and substantial justice because of a lack of Texas interest in adjudicating the dispute. *James*, 965 S.W.2d at 599. In reaching this conclusion, the majority noted that the United States Supreme Court had long repudiated "consent," "doing business" and "presence," as acceptable standards for asserting personal jurisdiction over a nonresident corporation, in favor of the "fair play and substantial justice" standard. *James*, 965 S.W.2d at 599–600; *see McGee v. International Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 200, 201, 2 L.Ed.2d 223 (1957).

Neither *James* nor *McGee* applies. The consent at issue in *James* was not express, as in *The Bremen* and this case, but implied.

We conclude *M/S Bremen* rule controls and that the trial court properly gave effect to the forum-selection clause because Abacan did not meet its burden to defeat the forum-selection clause.

We overrule Abacan's first issue presented.

In its second issue, Abacan challenges Texas courts' exercise of personal jurisdiction, on the grounds it offends due process under the Texas and federal constitutions. The forum-selection clause is valid under *M/S Bremen* precedent. Enforcement of a valid forum-selection clause does not offend due process. *Burger King Corp.*, 471 U.S. at 473 n. 14, 105 S.Ct. at 2182 n. 14; *see also Carnival Cruise Lines*, 499 U.S. at 580–90, 111 S.Ct. at 1525 (concluding that validity of clause under *The Bremen* was dispositive of constitutional challenges).

We overrule Abacan's second issue presented.

### Conclusion

We affirm the trial court's order denying Abacan's special appearance.