Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued May 22,
2008

 

 

 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-00614-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SHAMIL HALABU, Appellant

 

V.

 

PETROLEUM WHOLESALE, L.P., Appellee

 

 



On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2006-65581

 

 



MEMORANDUM OPINION

          Petroleum
Wholesale (“Petroleum”) sued appellant, Shamil Halabu, for breach of contract,
alleging that he had personally guaranteed a contract between Petroleum and USA Travel Center.  Halabu filed a special appearance in the trial court, asserting that it
lacked personal jurisdiction over him and denying that he had signed the
guarantee.  In his sole issue on appeal, Halabu contends that the trial court
erred in denying his special appearance.  We affirm.

Background

          In August 2005, Petroleum
and USA Travel entered into a “Fuel Marketing Location Agreement” (“FMLA”)
whereby Petroleum agreed to sell motor fuels to USA Travel delivered to its
place of business in Amarillo, Texas.  The FMLA contained a provision that
stated that the agreement “shall be construed under and in accordance with the
laws of the State of Texas, and all obligations of the parties created
hereunder are performable in Harris County, Texas.”[1] 
The bottom of each page of the FMLA is initialed “SH.”  Page eleven of the
agreement, entitled “GUARANTEE” contains a personal guarantee of payment and
performance of the FMLA.  It is signed, with the signature block reading SHAMIL
HALABU.  In 2006, Petroleum sued USA Travel for breach of contract, alleging
that USA Travel “unilaterally ceased doing business with [Petroleum] and has
failed and refused to pay the amounts owing,” and that Halabu guaranteed
payment by signing the gurarantee.  

          Halabu filed a special
appearance, contending that he does not do business in the State of Texas.  He further asserts that he did not sign the FMLA or the guarantee, nor did he
authorize anyone to sign the guarantee on his behalf.  Halabu attached the
affidavit of Sabah Senawi as evidence that he did not agree to the guarantee. 
Senawi’s affidavit stated that USA Travel and Petroleum had agreed that no
personal guarantee would be included in the contract.  Senawi further stated
that he had met with Ken Dixon, an employee of Petroleum and signed the documents
in his capacity as the corporate representative for USA Travel.  He contends
that he did not read the documents and trusted that Dixon would present him
with documents representing their true agreement.  Senawi further asserts that
“Shamil Halabu was not present at this meeting and did not sign any of the
documents entered into between the parties on August 17, 2005, nor did he
direct me to sign on his behalf.”

          In response to Halabu’s
special appearance, Petroleum filed the supporting affidavit of Ken Dixon.  Dixon stated that just prior to the signing of the FMLA and the personal guarantee, Senawi
called Halabu on the telephone to discuss the FMLA and the personal guarantee. 
According to Dixon, he had a telephone conversation the following day with
Halabu, who told Dixon that Senawi had authority to sign the documents on his
behalf and that he had reviewed the FMLA before it was signed.  At the special
appearance hearing, Halabu objected to Dixon’s affidavit because it was not
notarized and because it was not filed at least seven days before the hearing. 
See Tex. R. Civ. P.
120a(3).  The trial court did not rule on the objection before denying Halabu’s
special appearance.

Analysis

          In his sole issue, Halabu contends
that the trial court erred in denying his special appearance.  Halabu also
asserts that the trial court should not have considered Petroleum’s late-filed
affidavit by Ken Dixon.

          Special appearances are
governed by Rule 120a, which provides that “a special appearance may be made by
any party . . . for the purpose of objecting to the jurisdiction of the court
over the person or property of the defendant on the ground that such party or
property is not amenable to process by the courts of this State.”  Id. 120a.  

          On appeal we review de novo
the trial court’s determination to grant or deny a special appearance.  Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002).   The plaintiff bears the initial burden of pleading sufficient
allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  A nonresident defendant challenging the court’s exercise of personal
jurisdiction through a special appearance carries the burden of negating all
grounds for personal jurisdiction alleged by the plaintiff.  Id.; Glattly
v. CMS Viron Corp., 177 S.W.3d 438, 446 (Tex. App.—Houston [1st Dist.]
2005, no pet.).  We review all evidence in the record to determine if the
nonresident defendant negated all possible grounds.  N803RA, Inc. v. Hammer,
11 S.W.3d 363, 366 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985)).  

Trial courts must frequently resolve
questions of fact before deciding the jurisdictional question.  BMC Software,
83 S.W.3d at 794. When a trial court issues findings of fact and
conclusions of law, we may review the findings of fact on legal and factual
sufficiency grounds and review the conclusions of law de novo as a legal
question.  Silbaugh v. Ramirez, 126 S.W.3d 88, 94 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing BMC Software, 83 S.W.3d at 794).  If the
trial court does not issue findings of fact, “all facts necessary to support
the judgment and supported by the evidence are implied.”  BMC Software,
83 S.W.3d at 795.  In other words, if the trial court does not issue findings
of fact, a reviewing court should presume that the trial court resolved all
factual disputes in favor of its judgment.  Tri-State Bldg. Specialties,
Inc. v. NCI Bldg. Sys., L.P., 184 S.W.3d 242, 246 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Coleman, 83 S.W.3d at 806; BMC
Software, 83 S.W.3d at 795).  We may set aside a finding of fact only if
the evidence would not enable a reasonable and fair minded finder of fact to
make the finding under review.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  

          Two requirements must be
met before a Texas court can exercise personal jurisdiction over a nonresident
defendant.  First, the Texas long-arm statute must authorize the exercise of
jurisdiction, and second, the exercise of jurisdiction must be consistent with
the guarantees of due process.  Coleman, 83 S.W.3d at 806; Tri-State
Bldg. Specialties, Inc., 184 S.W.3d at 248.

          With respect to personal
jurisdiction, federal due process requires two things.  First, the nonresident
defendant must have purposefully established such minimum contacts with the
forum state that the defendant could reasonably anticipate being sued there.  Glattly,
177 S.W.3d at 446 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84 (1985)).  Second, if the nonresident defendant
has purposefully established minimum contacts with the forum, the exercise of
personal jurisdiction must also comport with traditional notions of fair play
and substantial justice.  Id. at 447 (citing Burger King,
471 U.S. at 475–76, 105 S. Ct. at 2183–84).  As to fairness, the defendant
bears the burden of presenting a “compelling case” that exercising jurisdiction
over him would not be fair or just.  See id. at 450.  Only in rare
cases, however, will a Texas court’s exercise of personal jurisdiction not
comport with fair play and substantial justice when the nonresident defendant has
purposefully established minimum contacts with the forum state.  Guardian
Royal Exch. Assur., Ltd. v. English Clays, P.L.C., 815 S.W.2d 223, 231 (Tex. 1991).  

Personal jurisdiction is a waivable requirement.
Burger King, 471 U.S. at 473 n. 14, 105 S. Ct. at 2182 n. 14; Ins.
Corp. of Ir. v. Compagnie des Bauxites de Guinée, 456 U.S. 694, 703, 102 S. Ct. 2099, 2105 (1982). A forum-selection clause is one of several ways in
which a litigant may expressly or impliedly consent to personal jurisdiction.  Abacan
Technical Servs. Ltd. v. Global Marine Intern. Servs. Corp., 994 S.W.2d 839,
843 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing Burger King,
471 U.S. at 473 n. 14, 105 S. Ct. at 2182 n. 14).  Enforcement of a forum-selection
clause is mandatory absent a showing that “enforcement would be unreasonable
and unjust, or that the clause was invalid due to fraud or overreaching.”  In re Automated Collection
Techs., Inc., 156 S.W.3d 557, 559 (Tex. 2004) (quoting In re AIU Ins.
Co., 148 S.W.3d 109, 112 (Tex. 2004)).

Petroleum Wholesale premised
jurisdiction on Halabu’s agreement to the forum-selection clause in the “Fuel
Marketing Location Agreement,” which Halabu allegedly personally guaranteed. 
Halabu contests enforcement of the clause designation performance in Harris
County on the grounds that the personal guarantee was not part of the
agreement, that he did not sign the personal guarantee, and that he did not
authorize Senawi to sign it as his agent.  Halabu asserts that the evidence is
insufficient to support a finding that he guaranteed the agreement and is
therefore bound by the forum-selection clause.  Specifically, Halabu states
that “Petroleum Wholesale had no evidence to challenge that produced by
Halabu,” and thus, “the proof supports only one conclusion; the Trial Court did
not have personal jurisdiction over Halabu.”  

Contrary to Halabu’s assertions,
Petroleum Wholesale presented proof that Halabu agreed to be bound by the
forum-selection clause: it provided the original contract and the guarantee
with Halabu’s signature.  Even if we do not consider the late-filed affidavit,
“the clause is prima facie valid and enforceable unless the opponent
establishes a compelling reason not to enforce it.”  Abacan Technical,
994 S.W.2d at 843.  Although Halabu presented contradictory evidence to
establish that Halabu did not sign the affidavit and did not authorize Senawi
to sign the affidavit as his agent, it is the sole province of the fact-finder
to resolve conflicts in the evidence.  See Benoit v. Wilson, 150 Tex. 273, 281–82, 239 S.W.2d 792, 796–97 (1951); Marshall Field Stores, Inc. v. Gardiner,
859 S.W.2d 391, 401 (Tex. App.—Houston [1st Dist.] 1993, writ dism’d
w.o.j.).  The trial court had before it the signed agreement that included the
forum-selection clause, as well as the signed personal guarantee.  The trial
court reasonably could have disregarded Senawi’s affidavit that stated that he
was not authorized to sign for Halabu and concluded that Halabu intended to
agree to the forum-selection clause for purposes of personal jurisdiction. 
Because it may be reasonably inferred from the evidence that Halabu agreed to
be bound by the forum-selection clause, sufficient evidence supports the trial
court’s findings.  See Lozano v. Lozano, 52 S.W.3d 141, 149 (Tex. 2001) (if it may reasonably be inferred from the circumstantial evidence that one or
more of the appellants assisted in the offense, then there
is some evidence to support the jury’s verdict).

Conclusion

          We affirm the trial court’s order denying Halabu’s
special appearance.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

 









[1]
              Halabu’s counsel attached an FMLA
agreement for Arizona as an appendix to his brief.  This agreement, however, is
not part of the record.  The agreement in this case, found in the clerk’s
record page 42, contains the above-quoted language in paragraph 29, entitled “TEXAS LAW TO APPLY.”