Opinion issued December 17, 2024



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00214-CV

_____

## T. EDWARD WILLIAMS AND WILLIAMS LLP, Appellants

## V.

## KABOOMRACKS, INC., RWVK, LLC AND ROBERT VAN KIRK, Appellees

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-26492**

---

## MEMORANDUM OPINION

Appellants T. Edward Williams and Williams LLP (collectively, the "Williams Parties") appeal the trial court's entry of a default judgment against them, as well as the trial court's denial of their motion to set aside the default judgment. We affirm.

## Background

This case began as a legal malpractice action. The Williams Parties are a lawyer and his law firm. Appellees Kaboomracks, Inc., RWVK, LLC, and Robert Van Kirk (collectively, "Appellees") are engaged in a business relating to the sale of cryptocurrency mining hardware. They claim the Williams Parties were negligent in representing them in an arbitration proceeding, which resulted in an adverse award and ultimately a judgment against them. Appellees filed this suit to recover the damages they allegedly suffered because of the Williams Parties' professional negligence.

### *The Underlying Litigation and Events Giving Rise to This Malpractice Suit.*

Appellees' business operations are in Texas. T. Edward Williams ("Williams") is an attorney based in New York; he is licensed to practice law in New York and Colorado. Williams LLP is Williams's New York law firm (the "Williams Firm"). Both Williams and the Williams Firm say they are residents of New York and Colorado.

In 2019, Williams contacted Van Kirk about a lawsuit pending in New York state court involving an alleged theft of bitcoin mining equipment. The parties apparently agree the Williams Parties advised Appellees in connection with the New York state lawsuit.

At the same time the New York suit was pending, a "related" arbitration proceeding was being conducted in New York. Appellees were parties to the arbitration. Appellees contend they engaged the Williams Parties to represent them in the arbitration proceeding; the Williams Parties disagree.

The arbitration proceedings resulted in an adverse award against Appellees. The prevailing parties in the arbitration sued Appellees in New York state court to have the arbitration award confirmed as a judgment. Appellees apparently believed the Williams Parties were representing them in the suit to confirm the arbitration award, while the Williams Parties believed they had not been engaged in that capacity. Accordingly, neither Appellees themselves nor the Williams Parties appeared for Appellees in the suit to confirm the arbitration award, and Appellees defaulted. The New York state court entered the arbitration award as a judgment against them in the amount of $47,830.00, plus interest and costs. The New York judgment was later domesticated as a Texas judgment, and Appellees paid $58,946 to satisfy it. They also paid $16,565 in attorney's fees to the Williams Parties.

***This Malpractice Suit and Appeal.***

Appellees sued the Williams Parties in Texas, claiming the adverse arbitration award and judgment entered against them in the New York proceedings were caused by the Williams Parties' negligence and breach of fiduciary duty. In response, the Williams Parties, represented by Williams, filed an "Entry of Special Appearance"

3

in July 2022, arguing the Texas trial court lacked personal jurisdiction over them. The bases for the Williams Parties' special appearance were that they were "not residents of this state," Appellees had "fabricated this suit," and they did not receive service of "Plaintiff's Complaint." Although Williams "certif[ied]" the special appearance was "meritorious," neither Williams nor the Williams Firm swore to the facts stated in it. The Williams Parties did not set the special appearance for a hearing or take other action to bring it to the trial court's attention; instead, they state in their brief that they "awaited a trial setting on the special appearance."

The case then went dormant for several months, and the trial court notified the parties it would be dismissed for want of prosecution. Appellees filed a verified motion to retain, in which they informed the trial court they intended to file a motion for default judgment. The Williams Parties did not respond to the motion to retain, nor did they set their special appearance for hearing.

A short time later, Appellees filed a motion for default judgment and set it for hearing. It was supported with copies of the returns of service of the citations on Williams and the Williams Firm; a "soldier's and sailor's affidavit" stating that Williams was not a member of the armed services; a certificate of the last known addresses for Williams and the Williams Firm; the declaration of Kaboomracks, Inc.'s CEO setting out the liquidated damages amounts Appellees claimed they had suffered as a result of malpractice by Williams and the Williams Firm; and an

4

affidavit from Appellees' counsel on the attorney's fees they had incurred in this matter.

The record shows that the Williams Parties were served with both Appellees' motion for default judgment and the notice of hearing. The record also confirms that the Williams Parties opened the electronic service copy of the notice of hearing. But the Williams Parties did not respond to the motion for default judgment or appear at the hearing, nor did they set their special appearance for hearing.

The trial court entered a default judgment for Appellees. It awarded them $75,511 in actual damages, $2,750 in attorney's fees, post-judgment interest, and costs. The default judgment states that it "disposes of all parties and all claims and is a final judgment and is appealable." The trial court signed the default judgment on December 5, 2022.

The Williams Parties contend they became aware of the default judgment nine days later, on December 14, 2022, while "speaking with the Clerk about a status update on when the [trial court] would rule on [their] Special Appearance."

Later that day, the Williams Parties moved to set aside the default judgment. The motion to set aside did not claim lack of timely notice of the judgment, nor did it state that it was made subject to the Williams Parties' special appearance. While the motion to set aside includes jurisdictional arguments, the Williams Parties also made substantive arguments about the merits of the case, claiming that Appellees

5

"and their attorney have made up lies and perpetuated fraud on [the trial court]. To put it simply, [Appellees] cannot maintain a suit against the [Williams Parties] because they know correctly that the [Williams Parties] never represented them in any shape, form, or fashion." Appellees opposed the motion to set aside, and the trial court denied it in a written order entered on January 26, 2023.

On February 24, 2023, the Williams Parties, now represented by Texas counsel, moved for a new trial. Appellees opposed this motion as well, and the trial court signed an order denying it on March 20, 2023.

The Williams Parties appealed. Their notice of appeal states that they are appealing the trial court's default judgment, as well as the order denying their motion to set aside the default judgment "pending the outcome" of their motion for new trial.

## Analysis

In three issues, the Williams Parties contend the trial court's entry of default judgment was improper. Their first issue argues the trial court lacked personal jurisdiction over them, and that their special appearance preserved their objection to the trial court's exercise of personal jurisdiction. Therefore, they say, the trial court had to rule on their special appearance before it could take any other action in the case, including its entry of default judgment.

6

In their second issue, the Williams Parties again contend their special appearance precluded the trial court from entering a default judgment. But here, they argue the special appearance should be construed as an answer and general appearance that precluded the trial court from hearing Appellees' motion for default judgment.

And finally, in their third issue, the Williams Parties argue the trial court violated Texas Rule of Civil Procedure 45 by failing to give them 45 days' notice before entering the default judgment.

## I.     The Williams Parties Waived Their Special Appearance.

The Williams Parties first contend the trial court lacked personal jurisdiction over them, and that any delay in setting a hearing on their special appearance did not waive it. But this argument has not been preserved for appellate review. And even if it had, we would overrule the Williams Parties' first issue on its merits.

### A.     The Williams Parties Did Not Preserve Their First Issue for Appellate Review.

The Williams Parties did not timely raise their first issue in the trial court, and thus they did not preserve it for appellate review. *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion . . . ."); *Abacan Tech. Servs. Ltd. v. Glob. Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 844 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("Abacan did not

7

preserve this complaint because Abacan did not raise it in the trial court."). The Williams Parties first raised this argument in their motion for new trial, but their motion for new trial was untimely.

Motions for new trial must be filed "prior to or within thirty days after the judgment or other order complained of is signed." TEX. R. CIV. P. 329b(a). The "judgment or other order complained of" in the Williams Parties' motion for new trial was the default judgment. The trial court signed the default judgment on December 5, 2022. Therefore, any motions for new trial were due by January 4, 2023. *See id.*

The Williams Parties did not file their motion for new trial until February 24, almost two months after the deadline had passed. As a result, it did not meet Texas Rule of Appellate Procedure 33.1(a)'s requirement that a complaint be "timely" presented to the trial court "[a]s a prerequisite to presenting [it] for appellate review." TEX. R. APP. P. 33.1(a). And because it was untimely, the Williams Parties' motion for new trial was a "nullity for purposes of preserving issues for appellate review." *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003); *see also Boyd v. Kobierowski*, 283 S.W.3d 19, 24 (Tex. App.—San Antonio 2009, no pet.) ("[A]n untimely motion can be a legal nullity.").

**B.** **The Williams Parties Waived Their Special Appearance by Invoking the Trial Court's Authority on the Merits of the Case.**

We would overrule the Williams Parties' first issue even if it was preserved. They contend the trial court was required to rule on their special appearance challenge to personal jurisdiction before considering any other issue, but the Williams Parties waived their special appearance by invoking the trial court's authority on the merits of the case before obtaining a ruling on the personal jurisdiction question. *See Grynberg v. M-I L.L.C.*, 398 S.W.3d 864, 877–79 (Tex. App.—Corpus Christi-Edinburg 2012, no pet.) (litigant's filing of motion for new trial waived objection to exercise of personal jurisdiction) (citing *Liberty Enters. v. Moore Transp. Co.*, 690 S.W.2d 570, 571–72 (Tex. 1985)). This issue—the trial court's decision about a party's waiver of objections to personal jurisdiction—is a question of law that we review de novo. *See Moore v. Pulmosan Safety Equip. Corp.*, 278 S.W.3d 27, 32 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Texas courts can exercise personal jurisdiction over an out-of-state defendant consistent with the defendant's due process rights and as permitted by Texas's long-arm statute. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) ("Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees."). A defendant's objection to the trial court's exercise of personal

9

jurisdiction "can be waived," *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.), and the defendant can effect such a waiver in a variety of ways. *Conners v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 415 (Tex. App.—Houston [14th Dist.] 1997, no writ.) ("[T]here are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.").

One way in which a defendant can waive challenges to personal jurisdiction is by making a general appearance. *Adeleye v. Driscal*, 544 S.W.3d 467, 476 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A defendant makes a general appearance when it "(1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004).

By contrast, Texas Rule of Civil Procedure 120a establishes the procedure for challenging a trial court's exercise of personal jurisdiction. Rule 120a allows a party to make a "special appearance"—a limited appearance for the sole purpose of challenging personal jurisdiction—without making a general appearance that waives the objection to personal jurisdiction. *See* TEX. R. CIV. P. 120a; *First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 776 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("Rule 120a requires compliance with its terms, by stating that the

consequence for failure to comply with its terms is a waiver of the special appearance."). And Rule 120a is the *exclusive* method by which defendants can directly challenge the trial court's exercise of personal jurisdiction over them. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (other than following the special appearance procedure set out in Rule 120a, a "nonresident defendant [has] only two options: he [can] either appear and consent to jurisdiction or allow a default judgment to be taken against him and attack the Texas judgment as being void if the plaintiff brought suit in the defendant's state to enforce the judgment").

A defendant must strictly comply with Rule 120a's requirements. *See Silbaugh v. Ramirez*, 126 S.W.3d 88, 93 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A defendant's failure to strictly comply waives any jurisdictional challenge. *See* TEX. R. CIV. P. 120a.1 ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance.").

Rule 120a contains a mandatory order of operations. It requires that a "special appearance shall be "filed prior to . . . any other plea, pleading, or motion," TEX. R. CIV. P. 120a.1, and "heard and determined before . . . any other plea or pleading may be heard." TEX. R. CIV. P. 120a.2. These requirements are known as the "due-order-of-pleading" and "due-order-of-hearing" requirements, respectively. *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston

11

[1st Dist.] 2020, no pet.). And because Rule 120a requires strict compliance, a failure to strictly adhere to its due-order-of-pleading and due-order-of-hearing requirements waives jurisdictional challenges. *See Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("A defendant that does not strictly comply with the procedural requirements of Rule 120a, including the due-order-of-pleading and due-order-of-hearing requirements, waives its jurisdictional challenge and enters a general appearance.").

In determining whether a defendant has strictly complied with Rule 120a and thus preserved his special appearance, our focus is the defendant's actions and whether those actions invoke the court's jurisdiction—not on the court's response to those actions. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 276 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("[T]he relevant inquiry concerning a defendant's waiver of a special appearance, is not what a court does in response to a filing . . . . Rather, the pertinent inquiry is whether a defendant truly seeks any affirmative action from the court."). "Generally, if a defendant obtains a hearing on a motion that seeks affirmative relief unrelated to his special appearance before he obtains a hearing and ruling on his special appearance, he has entered a general appearance and thus waived any challenge to personal jurisdiction; but if a defendant obtains a hearing on a motion that only seeks relief appurtenant to his special appearance, it may not result in waiver." *Trenz*, 388 S.W.3d at 802. The test for

determining whether a defendant's motion makes a general appearance before obtaining a ruling on his special appearance is whether the other motion seeks "affirmative relief inconsistent with [the defendant's] assertion that the district court lacked jurisdiction." *Dawson-Austin v. Austin*, 968 S.W.2d 319, 323 (Tex. 1998).

Here, there is no dispute that the Williams Parties complied with Rule 120a's due-order-of-pleading requirement, because they filed their special appearance before filing "any other plea, pleading or motion." TEX. R. CIV. P. 120a.1. Instead, the question is whether they later waived their special appearance by moving to set aside the default judgment and obtaining a ruling on that motion before obtaining a ruling on their special appearance—that is, whether the Williams Parties' motion to set aside the default judgment violated the due-order-of-hearing requirement. *Cf. Glob. Paragon Dall., LLC v. SBM Realty, LLC*, 448 S.W.3d 607, 613 (Tex. App.— Houston [14th Dist.] 2014, no pet.) ("SBM Realty violated rule 120a's due-order-of-hearing requirement and entered a general appearance because it obtained a ruling on its motion for new trial before obtaining a ruling on its special appearance.").

We conclude that it did. First, several Texas courts have held that a motion for new trial is a request to invoke the court's authority that is inconsistent with a challenge to its exercise of personal jurisdiction. *See, e.g.*, *id.* ("[A] motion for new trial is an acknowledgement of the court's jurisdiction and a request to invoke the

13

court's authority."); *Anderson v. Anderson*, 786 S.W.2d 79, 81 (Tex. App.—San Antonio 1990, no writ) ("A motion for new trial seeks to invoke the authority of the court, while the special appearance necessarily challenges that same authority."). And while the Williams Parties labeled their filing a "motion to set aside default judgment" rather than a "motion for new trial," it was a motion for new trial for purposes of the due-order-of-hearing requirement. *See Lab'y Corp. of Am. v. Mid-Town Surgical Ctr., Inc.*, 16 S.W.3d 527, 528 (Tex. App.—Dallas 2000, no pet.) ("We deem appellant's motion to set aside the default judgment to be a motion for new trial because a motion for new trial following a default judgment requests that the default judgment be set aside."). The Williams' Parties thus sought to invoke the trial court's jurisdiction when they moved to set aside the default judgment.

Second, the motion to set aside makes clear it sought the trial court's affirmative relief on the merits of the case rather than mounting a purely jurisdictional challenge. In it, the Williams Parties argue that: (1) they "can defend this action because the action is frivolous"; (2) Appellees "cannot maintain a suit . . . because they know correctly that [the Williams Parties] never represented them in any shape, form, or fashion"; and (3) "[Appellees] and their attorney have made up lies and perpetuated fraud on this Court." The motion to set aside thus sought the trial court's ruling on matters unrelated to the question of personal jurisdiction, and in doing so it sought affirmative relief the trial court could award

14

only if it had jurisdiction. *See Boyo v. Boyo*, 196 S.W.3d 409, 418 (Tex. App.—Beaumont 2006, no pet.) ("When a party asks a court to set aside a judgment, that request is treated generally as a submission to the jurisdiction of the Courts of this State."); *see also Glob. Paragon*, 448 S.W.3d at 613 (motion for new trial waived special appearance because it was a "challenge to the trial court's award [that] seeks affirmative relief that the court could grant only if it had jurisdiction").

Third, the Williams Parties' special appearance was ineffective because it was not sworn. *Cf.* TEX. R. CIV. P. 120a.1 (special appearance "shall be made by sworn motion"); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 321–22 (Tex. 1998) ("[A]n unsworn special appearance does not comply with Rule [120a.1], and thus is ineffectual to challenge in personam jurisdiction.").

And the Williams Parties never stated that the motion was subject to their special appearance. *Cf. Puri v. Mansukhani*, 973 S.W.2d 701, 707 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("Many Texas courts generally recognize that if a non-resident defendant discovers a default judgment was entered, he should file a special appearance and then a motion for new trial *subject to his special appearance*." (emphasis in original; citations omitted)); *Lang v. Cap. Res. Invs. I & II, LLC*, 102 S.W.3d 861, 864–65 (Tex. App.—Dallas 2003, no pet.) (defendant's motion for new trial did not waive special appearance in part because it was made "subject to" the special appearance). Instead, they sought affirmative relief on the

15

merits of the case and then proceeded to allow the trial court to rule on their motion, without first obtaining a ruling on their special appearance. *See Landry v. Daigrepont*, 35 S.W.3d 265, 268 (Tex. App.—Corpus Christi-Edinburg 2000, no pet.) ("We conclude Daigrepont waived his special appearance by arguing his motion for new trial before the special appearance had been determined.").

It does not matter that the Williams Parties also included jurisdictional arguments in their motion to set aside. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 140 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (defendant waived special appearance by seeking relief "at least partially unrelated to" special appearance); *see also Glob. Paragon*, 448 S.W.3d at 613 (special appearance waived even though defendant's "motion to vacate default judgment and for new trial contains arguments that overlap to some extent with the arguments in its special appearance, [in part because] its July 24 motion for new trial addresses the merits of the default judgment's award of unliquidated damages and that the judgment provides a double recovery"). The fact that they sought and obtained a merits ruling before securing a jurisdictional ruling means the Williams Parties waived their special appearance. *See Trenz*, 388 S.W.3d at 803 ("By obtaining and participating in hearings on requests for affirmative relief from the trial court before obtaining a ruling on his special appearance, Trenz violated Rule 120a and waived his challenge to personal jurisdiction.").

This invocation of the trial court's authority on the merits of the case, at odds with the Williams Parties' jurisdictional challenge, waived their special appearance. *See Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 134 (Tex. App.—Dallas 2011, no pet.). As the Williams Parties concede in their brief, "[a] party enters a general appearance, and so waives its special appearance, if the party invokes the judgment of the court on any question other than the court's jurisdiction or recognizes by its acts that an action is properly pending against it."

The Williams Parties nevertheless argue their special appearance remains viable because a "[d]elay in setting a hearing on a special appearance does not waive the special appearance." And they are correct: the mere passage of time—even long periods of time—does not *in itself* waive a special appearance. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Delay in setting the hearing did not waive the special appearance.") (citing *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hancock Tire Co., Ltd.*, No. 02-04-00254-CV, 2006 WL 1030185, at *4 (Tex. App.—Fort Worth Apr. 20, 2006, pet. denied) (mem. op.) (delay of 18 months in setting special appearance for hearing did not waive it)); *Alpine Ocean Seismic Survey, Inc. v. Moore*, No. 14-19-00499-CV, 2021 WL 2325097, at *2 (Tex. App.—Houston [14th Dist.] June 8, 2021, no pet.) (mem. op.) (delay of 20 months did not waive special appearance).

But the issue here was not merely the passage of time; rather, the issue was that the Williams Parties waived their special appearance by invoking the trial court's authority when they moved to set aside and then allowed the trial court to rule on the motion to set aside without first securing a ruling on the special appearance, or at a minimum stating that the motion to set aside was made subject to the special appearance. *See Glob. Paragon*, 448 S.W.3d at 613; *Trenz*, 388 S.W.3d at 803; *Puri*, 973 S.W.2d at 707.

The Williams Parties also suggest in their brief that it was the trial court's "duty" to take up their special appearance before taking any other action in the case. But "it is the specially appearing defendant's responsibility timely to request a hearing and secure a ruling on the preliminary question of personal jurisdiction. The specially appearing defendant must not only request a hearing, but specifically call that request to the trial court's attention. He waives his special appearance by not timely pressing for a hearing thereon." *Bruneio v. Bruneio*, 890 S.W.2d 150, 154 (Tex. App.—Corpus Christi-Edinburg 1994, no pet.).

Here, it is undisputed that the Williams Parties never set their special appearance for hearing or submission, and nothing in the record shows that they brought the special appearance to the trial court's attention before asking for a ruling on the merits in their motion to set aside the default judgment. Therefore, they "violated Rule 120a's due-order-of-hearing requirement and entered a general

appearance because [they] obtained a ruling on [their] motion for new trial before obtaining a ruling on [their] special appearance." *Glob. Paragon*, 448 S.W.3d at 613.

We overrule the Williams Parties' first issue.

**II.  The Williams Parties' Special Appearance Was Not an Answer and General Appearance Barring the Entry of Default Judgment.**

In their second issue, the Williams Parties contend the trial court's "failure to hear" their special appearance prohibited it from considering Appellees' motion for default judgment. They argue that "the special appearance constitutes a general appearance and answer to the suit" that "prohibit[s] the trial court from moving forward hearing Appellees' motion for default judgment." The sole authority the Williams Parties cite in support is *Brown v. Brown*, 520 S.W.2d 571, 575 (Tex. App.—Houston [1st Dist.] 1975, writ dism'd), and specifically *Brown*'s conclusion that a "special appearance was, of itself, an appearance . . . that amounted to a submission to the court's jurisdiction." *Id*. at 575.

But *Brown* is distinguishable, and its holding does not apply. *Brown* was a divorce case in which the defendant husband filed a special appearance challenging the trial court's exercise of personal jurisdiction over him. *Brown*, 520 S.W.2d at 572–73. The husband's special appearance contained a stipulation in which he agreed to make alimony payments, and in which he also agreed that any missed alimony payment would "automatically withdraw" the special appearance and convert it to "a general denial and general appearance." *Id*. at 574. The husband then

19

missed an alimony payment, and the court of appeals concluded, consistent with his stipulation, that he had withdrawn his special appearance and generally appeared. *See id*. at 575. Thus, while *Brown* concluded the husband's special appearance would be treated as an appearance that "amounted to a submission to the court's jurisdiction," it also was careful to note that this conclusion was limited to "the facts of this case" and a result of "the stipulation attached to [the husband's] special appearance." *Id*. Contrary to the Williams Parties' contention, *Brown* does not announce a general rule that a special appearance should be treated as an answer and general appearance precluding default judgment.

This argument is also contrary to the special appearance process established by the Texas Rules of Civil Procedure. Rule 120a sets the special appearance as a unique procedure designed specifically to challenge personal jurisdiction. *See* TEX. R. CIV. P. 120a. Conflating special and general appearances would defeat that purpose. *See Trenz*, 388 S.W.3d at 800. And as we noted above, it was the Williams Parties' responsibility, and not that of the trial court, to bring their special appearance to the trial court's attention and secure a ruling on it before proceeding with their motion to set aside. *See Bruneio*, 890 S.W.2d at 154.

We overrule the Williams Parties' second issue.

## III.    The Williams Parties Waived Their Third Issue.

The Williams Parties contend in their third issue that the trial court erred by not giving them 45 days' notice before entering default judgment, which they argue was required by Texas Rule of Civil Procedure 245. Rule 245 requires that the parties to "contested cases" be given at least 45 days' notice of "a first setting for trial." TEX. R. CIV. P. 245. Building on their second issue, the Williams Parties' position appears to be that their special appearance should be construed as an answer that made this a "contested case," thus entitling them to the 45-day notice period required by Rule 245.

But again, the Williams Parties did not present this argument to the trial court; they raise it for the first time on appeal. As a result, they failed to preserve their third issue for appellate review. *See* TEX. R. APP. P. 33.1(a); *Abacan Tech. Servs.*, 994 S.W.2d at 844.

Even if this issue had been preserved, Rule 245's notice requirement does not apply. Rule 245 also states that "[n]oncontested cases may be tried or disposed of at any time whether set or not, and may be set at any time for any other time." TEX. R. CIV. P. 245. As the Williams Parties' concede, "[a] case is 'noncontested,' and thus is not subject to Rule 245's [45] day notice requirement, when the defendant does not file a written answer." *Long v. Comm'n for Law. Discipline*, No. 14-11-00059-CV, 2012 WL 5333654, at *2 (Tex. App.—Houston [14th Dist.] Oct.

30, 2012, no pet.) (mem. op.). Here, the Williams Parties did not answer, and for the reasons explained above their special appearance cannot be construed as an answer. Therefore, Rule 245's notice requirement was not applicable.

Finally, the Williams Parties claim that the problem was not merely that they did they not receive 45 days' notice of a hearing on Appellees' motion for default judgment, but rather that they did not receive *any* notice of either the motion or the hearing. The record shows otherwise. It reflects that the Williams Parties were electronically served with Appellees' motion for default judgment and notice of hearing on November 10, 2022, and that the Williams Parties opened the electronic service copy of the notice of hearing on November 28, 2022.

We overrule the Williams Parties' third issue.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.