585 So.2d 1052 (1991)
Deborah FISHBEIN, Appellant/Cross-Appellee,
v.
PALM BEACH SAVINGS & LOAN ASSOCIATION, F.S.A., et al., Appellees/Cross-Appellants.
No. 90-1937.
District Court of Appeal of Florida, Fourth District.
September 4, 1991.
Rehearing, Rehearing and Certification Denied October 24, 1991.
*1053 Allan H. Hoffman, West Palm Beach, for appellant/cross-appellee.
Neil P. Linden and David B. Haber of Rollnick, Rosen and Linden, P.A., Coral Gables, for appellee/cross-appellant-Palm Beach Sav. & Loan Ass'n, F.S.A.
Rehearing, Rehearing En Banc and Certification Denied October 24, 1991.
GARRETT, Judge.
Deborah Fishbein [Mrs. Fishbein] appeals the trial court's final judgment that awarded appellee Palm Beach Savings & Loan Association, F.S.A. [Bank] an equitable lien on her Palm Beach property and the Bank cross appeals the trial court's ruling that the Bank could not foreclose its mortgage because the mortgage did not attach to the Palm Beach property on the date of her divorce. The Bank also appeals the trial court's ruling that Mrs. Fishbein did not abandon the Palm Beach property when she moved to Boca Raton. We reverse the award of the equitable lien, but affirm the issues on cross appeal.
Mrs. Fishbein was married to Mr. Fishbein when he purchased a house located in Palm Beach in October of 1984. Mr. Fishbein took title to the property in his name alone, however, the house became their marital home. In March of 1985 Mr. Fishbein executed a quit claim deed from himself to himself and Mrs. Fishbein, as tenants by the entireties. The quit claim deed was never recorded.
Mr. Fishbein assumed an existing first mortgage on the Palm Beach house, he gave a second mortgage at the time of purchase and on November 26, 1985 Mr. and Mrs. Fishbein executed a third mortgage. The third mortgage acknowledged the existence of the first and second mortgages.
In 1988 Mr. and Mrs. Fishbein were involved in divorce proceedings. The Bank knew about the divorce when it loaned Mr. Fishbein $1,200,000. He wrote the Bank a letter shortly before the closing inquiring whether the mortgage could be made without his wife's signature. The Bank required Mrs. Fishbein's signature but contrary to its closing procedures, permitted Mr. Fishbein to take the loan documents out of the bank and return them signed and notarized. Mr. Fishbein forged Mrs. Fishbein's signature. He secured this loan with a mortgage on the Palm Beach property and used a portion of the proceeds to pay off its three existing mortgages, back property taxes and creditor liens.
Mr. and Mrs. Fishbein's dissolution settlement agreement called for Mr. Fishbein to purchase a home for Mrs. Fishbein in Boca Raton and to make several large payments to her in addition to child support for their two children and alimony. As security for the agreement, Mr. Fishbein signed a quit claim deed on the Palm Beach property. Mrs. Fishbein's attorney was to hold the quit claim deed as security for Mrs. Fishbein in the event Mr. Fishbein failed to fulfill his part of the settlement agreement. During the settlement negotiations Mr. Fishbein represented that the Palm Beach property was owned free and clear of any liens except those being asserted by his mother and sister.
The divorce was granted in August of 1988. At that time, Mrs. Fishbein moved to the Boca Raton house Mr. Fishbein had agreed to purchase for her. However, Mr. Fishbein did not purchase the Boca Raton house nor, with the exception of one $1,000 payment, did he make any alimony or child support payments. As a result, in November of 1988 the trial court entered a nunc pro tunc order that awarded Mrs. Fishbein *1054 the Palm Beach property retroactively to the date of the divorce decree. Mrs. Fishbein moved back into Palm Beach house in December of 1988.
On December 5, 1988 the Bank filed the complaint in this case which sought foreclosure of its mortgage on the Palm Beach property or in the alternative an equitable lien against that property. Mrs. Fishbein defended on the grounds that the Palm Beach house was homestead property, her signature was forged on the loan documents without her knowledge or consent and the Bank was negligent in the manner in which it closed the transaction.
Initially the trial court granted partial summary judgment in favor of Mrs. Fishbein, finding the mortgage to be void. The Bank's motion for rehearing was denied. The Bank did not file an appeal of this order, but several months later, it filed a motion for reconsideration of the order granting partial summary judgment. The trial court granted the motion and vacated the partial summary judgment.
After a bench trial, the trial judge found that Mr. Fishbein had forged Mrs. Fishbein's signature on the mortgage and misrepresented that the Palm Beach property was free and clear of any liens. It ruled that Mr. Fishbein's fraud vitiated any intent upon Mrs. Fishbein's part to abandon the homestead. It also found that Mr. Fishbein's fraud prevented title, unencumbered by Mrs. Fishbein's right of homestead, from vesting in Mr. Fishbein as of the date of the divorce decree. The trial court ruled that because Mr. Fishbein did not acquire title to the Palm Beach property unencumbered by Mrs. Fishbein's homestead rights, the Bank's mortgage did not attach to the Palm Beach property upon entry of the divorce decree or upon Mrs. Fishbein's departure from the Palm Beach house. The court held that the Palm Beach property remained Mrs. Fishbein's homestead and that the Bank could not foreclose on its mortgage.
However, the trial court did award the Bank an equitable lien on the Palm Beach property to the extent that the proceeds of the loan were used to satisfy the preexisting mortgages and property taxes. Although the trial court agreed with Mrs. Fishbein that the Bank was negligent in the manner by which it chose to close the loan, the trial court ruled that the Bank's conduct did not rise to the level of "active misfeasance." Finding that the Palm Beach property would have been subject to the preexisting mortgages and taxes if Mr. Fishbein had not procured the loan from the Bank, the trial court concluded that by awarding the Bank an equitable lien, Mrs. Fishbein stood in no worse position than she would have stood in had there been no fraudulent mortgage. This appeal and cross appeal followed. The Bank proceeded to execute on its judgment, but we stayed those proceedings pending the outcome of this appeal.

HOMESTEAD EXEMPTION
For the reasons stated by the trial judge, we agree that the Palm Beach property remained Mrs. Fishbein's homestead.[1]
Article X, section 4 of the Florida Constitution provides that no judgment shall be a lien on homestead property except for the payment of taxes and assessments, obligations contracted for its purchase, improvement or repair, or for labor performed on the property. The judgment, sub judice, obviously created a lien on the Palm Beach property. But, because the basis of the judgment, the loan to Mr. Fishbein, did not fall within any of the exceptions enumerated in our state constitution the Bank cannot execute on the Palm Beach property. See Caggiano v. Butterworth, 583 So.2d 347 (Fla. 2d DCA 1991) (criminal enterprise forfeiture judgment not one of the constitutional exceptions to homestead exemption).[2] The fact *1055 that Mr. Fishbein used the proceeds to pay off existing mortgages and back property taxes did not change the basis of the Bank's judgment from the loan to Mr. Fishbein to an obligation contracted to purchase or to pay taxes on the Palm Beach property.
Therefore, we affirm the trial court's ruling that the Bank cannot execute on its mortgage foreclosure judgment so long as the Palm Beach property remains Mrs. Fishbein's or her children's homestead property.

EQUITABLE LIEN
Mrs. Fishbein contends that in order to successfully impose an equitable lien on homestead property, the creditor must prove fraudulent or otherwise egregious conduct on the part of the beneficiary of the homestead. She argues that because the mortgage in question is invalid, the Bank is not entitled to an equitable lien on the homestead property. She also contends that the Bank negligently granted the mortgage and for this reason is not entitled to an equitable remedy especially when that remedy dispossesses her of homestead property.
The Bank responds that it is entitled to a lien because the proceeds of its invalid mortgage were used to pay off valid liens and property taxes on the homestead property. It argues that when a mortgage is invalid, the party granting the mortgage is entitled to an equitable lien to the extent that the proceeds of the mortgage were used to improve the property. The Bank points out that courts in Florida have imposed equitable liens on homestead property. The Bank disagrees with Mrs. Fishbein that the fraudulent or egregious conduct must be committed by the beneficiary of the homestead in order for a creditor to be entitled to an equitable lien. According to the Bank, all a creditor has to do is prove fraudulent or reprehensible conduct to be entitled to an equitable lien.
We disagree with the Bank. "The purpose of an equitable lien is to achieve right and justice, considering the relations of the parties and the circumstances of their dealings." Public Health Trust of Dade County v. Lopez, 531 So.2d 946, 948 (Fla. 1988).[3] However, courts may impose equitable liens against homestead real property only where the plaintiff can establish some fraudulent or otherwise egregious conduct on the part of the beneficiary of the homestead protection. Isaacson v. Isaacson, 504 So.2d 1309, 1310-1311 (Fla. 1st DCA 1987). Limiting the imposition of equitable liens against homestead property to cases where the plaintiff has established fraud or other egregious conduct on the part of the beneficiary of the protection is "consistent with the well-established principle that exceptions from the constitutional exemption from forced sale are to be strictly construed." Id. at 1311.
Despite the fact that the trial judge concluded that the Bank had not established fraud on Mrs. Fishbein's part, he imposed an equitable lien in the Bank's favor based on his finding that the Bank had established fraud on Mr. Fishbein's part. The trial judge relied on Clutter Construction Corp. v. Clutter, 173 So.2d 761 (Fla. 3d DCA 1965), which holds that to recover an equitable lien on homestead property, the plaintiff must establish fraud or reprehensible conduct.
Mrs. Fishbein correctly relies on Isaacson for the proposition that in order to be entitled to an equitable lien against homestead property a plaintiff must prove fraud or egregious conduct on the part of the beneficiary of the homestead protection. Although the Bank suggests that Isaacson conflicts with Clutter, again we disagree. The Clutter opinion provides no facts. It does not discuss the law in detail. To interpret Clutter as only requiring proof of fraud on someone's part rather than on the part of the person claiming homestead protection *1056 is to defeat the purpose of homestead protection. To allow one party's fraud to affect another party's homestead interest is exactly the same as allowing one party's debts to encumber homestead property. In this case, applying the rule in the manner that the trial court did resulted in depriving Mrs. Fishbein of the homestead exemption provided to her by the Florida Constitution.
Based on Isaacson, we conclude that the only basis on which a court may impose an equitable lien is where there is fraud or egregious conduct by the party claiming the homestead exemption. Therefore, we hold that the trial court erred when it imposed an equitable lien against the homestead property because the Bank failed to establish fraudulent conduct on Mrs. Fishbein's part.
However, the trial court also based its decision to impose the equitable lien on the fact that Mrs. Fishbein would have been liable for the three existing mortgages on the property if Mr. Fishbein had not paid them off with the fraudulent mortgage. In essence, the trial court imposed a lien against homestead property for an equitable reason. We hold that the trial court erred when it imposed the equitable lien on this basis. The plain language of the constitution cannot be ignored, homestead protection is not and never was based upon principles of equity. Public Health Trust of Dade County v. Lopez, 531 So.2d 946, 968 (Fla. 1988). Homestead protection has always been extended to the homesteader or his or her heirs regardless of whether the property is a mansion or a hut and regardless whether the heirs are rich or poor and regardless whether it is equitable to do otherwise.
As a matter of public policy, the purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law. See Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328 (Fla. 1940). [Emphasis added.]
Id.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
FARMER, J., concurs.
STONE, J., dissents with opinion.
STONE, Judge, dissenting.
I would affirm the imposition of an equitable lien on the property. The trial court has the discretion to conclude that the appellant has received a windfall constituting unjust enrichment. Therefore, the appellant cannot in good conscience retain the property free and clear of all liens. Cf. Sonneman v. Tuszynski, 139 Fla. 824, 191 So. 18 (Fla. 1939); La Mar v. Lechlider, 135 Fla. 703, 185 So. 833 (Fla. 1939); Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (Fla. 1925).
NOTES
[1] The transfer of a husband's interest in homestead property to his wife pursuant to a divorce decree is equivalent to the defeasance of the husband's interest in the property which would have occurred had he predeceased the wife while the parties were still married. Liberman v. Kelso, 354 So.2d 137, 139 (Fla. 2d DCA 1978).
[2] We acknowledge that the Fifth District has held otherwise, but on different grounds. See DeRuyter v. State, 521 So.2d 135, 137-138 (Fla. 5th DCA 1988) (homestead exemption designed to protect real property from forced sale for debts, not criminal enterprise).
[3] If required to do so, we would not hesitate to conclude that as between the Bank and Mrs. Fishbein, the Bank, the party who was best able to avert the loss and who was least innocent, should bear the loss caused by Mr. Fishbein.