# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2010

Lyle W. Cayce
Clerk

No. 09-40641

KELLY M. CRAWFORD,

> Appellee

v.

WENDY SILETTE,

> Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, and SMITH and ELROD, Circuit Judges.

EDITH H. JONES, Chief Judge:

Wendy Silette retired her Florida condominium's mortgage with $328,000 given her by George Hudgins. Unbeknownst to Silette, Hudgins obtained this money by defrauding investors through a Ponzi scheme. A court-appointed receiver in Hudgins's case petitioned the court to take control of Silette's condominium in order to sell it and redistribute the funds to Hudgins's victims. The district court granted the petition, imposed an equitable lien, and ordered Silette to transfer the condominium to the receiver. Silette appeals, arguing that the Florida Constitution's homestead exemption prevented the court from imposing an equitable lien and that the transfer order was improper. We affirm.

## I. BACKGROUND

In January 2008, Silette received $368,500 from Hudgins, the true villain in this case. At that time, Hudgins was defrauding investors through a Ponzi scheme, of which the gifts were proceeds. Silette was unaware of the fraud. She used part of the money to pay off the mortgage on the condo, her homestead since 2000.

In May 2008, the Commodity Futures Trading Commission brought an action against Hudgins to enjoin his scheme and seek civil penalties and other equitable relief. The district court appointed a receiver, Kelly Crawford, to reclaim Hudgins's assets for the benefit of the defrauded investors. While the CFTC and Hudgins have settled their case,[1] the receivership's efforts are not yet complete.

In June 2008, the receiver demanded that Silette return the gifts. Silette refused, responding that she used the money to retire her mortgage. The parties negotiated unsuccessfully for several months to reach an accommodation. In December 2008, the receiver petitioned the district court to require Silette to turn over the condominium because it was purchased with fraudulently obtained money. Silette contended that the condominium was her homestead and protected by the Florida constitution's liberal homestead exemption.

On June 3, 2009, the district court rejected Silette's argument, holding that while Florida's homestead exemption did apply, state law nonetheless allowed the imposition of an equitable lien because the homestead was purchased with fraudulently obtained money. Accordingly, the receiver owned an equitable lien on the condominium and could immediately foreclose. On June 4, 2009, the district court ordered Silette to execute a quitclaim deed and to vacate the condominium by July 3, 2009, which she did. The receiver

---

[1] Hudgins pled guilty to the criminal charges stemming from his fraudulent investment activities.

assumed possession of the condominium. On November 2, 2009, the court approved the condominium's sale. This court stayed the sale pending appeal.

## II. JURISDICTION

Before addressing the merits, we must first determine whether the district court had jurisdiction over the dispute. We review determinations of subject matter jurisdiction *de novo*. *McAllister v. Federal Deposit Ins. Corp.*, 87 F.3d 762, 765 (5th Cir. 1996). Silette asserts that the district court lacked subject matter jurisdiction because of the local action doctrine. The local action doctrine holds that "federal and state courts lack jurisdiction over the subject matter of claims to land located outside the state in which the court sits." *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987). It "prevents courts unfamiliar with local property rights and laws from interfering with title to real property which must be recorded under a unitary set of rules to keep it free of conflicting encumbrances." *Id.* at 290.

This argument fails; federal law creates subject matter jurisdiction for federal receivers. 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof."). As the Sixth Circuit explained:

> [It is an] undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.

*Haile v. Henderson Nat. Bank*, 657 F.2d 816, 822 (6th Cir. 1981). The CFTC properly brought suit against Hudgins in the Eastern District of Texas, the district court appointed the receiver, and the receiver brought suit against Silette to recover the condominium.

3

## III.  DISCUSSION

### A.

Silette asserts that Article X, Section 4 of the Florida Constitution barred the district court from imposing an equitable lien on the condominium and forcing its sale.  When fashioning equitable relief, a court acts with broad discretion, which we review for abuse of discretion.  *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001).  Section 4 states:

> [A homestead] shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty . . .

FLA. CONST. art. X, § 4a.  Courts construe the homestead exemption liberally in favor of homeowners.  *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018, 1020 (Fla. 2001).  Nonetheless, despite the strong presumption in favor of homestead protections, "where equity demands it, [the Florida courts have] not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of article X, section 4."  *Id.* at 1024.  Specifically, the Florida Supreme Court explained that courts invoke "equitable principles to reach beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." *Id.* at 1028.

In this case, Silette retired the condominium's mortgage using fraudulently obtained money, yet she knew nothing of the scheme.  Sadly, both parties are innocent and one party must lose.[2]  Silette contends that the court

---

[2]Ideally, the parties might have settled:  Silette would refinance her condominium and pay Crawford the $328,000, essentially replacing her mortgage and paying off Hudgins' investors.  Unfortunately, the current financial climate made this impossible.  Not only have financial institutions

cannot impose an equitable lien on her homestead because she was not complicit in the fraud. We disagree. In Florida, an equitable lien can be imposed on a homestead where an innocent party used fraudulently obtained funds to invest in the homestead.

In *Palm Beach Savings & Loan Ass'n v. Fishbein*, the Florida Supreme Court held that, when imposing equitable liens, courts should focus on whether the party claiming the homestead exemption would be unjustly enriched. 619 So.2d 267, 270 (Fla. 1993). In *Fishbein*, Mr. Fishbein fraudulently obtained a fourth mortgage on their homestead by forging his innocent wife's signature. *Fishbein v. Palm Beach Savings & Loan Ass'n*, 585 So.2d 1052, 1053-1054 (Fla. Dist. Ct. App. 1991). With the proceeds, Mr. Fishbein paid off the home's first, second, and third mortgages. *Id.* When the Fishbeins subsequently divorced, Mrs. Fishbein obtained possession of the house. *Id.* Because Mrs. Fishbein now claimed the house as her homestead and had not signed the loan documents, the fourth mortgage was not secured by the home and became unsecured debt. *Id.* Palm Beach Savings & Loan went forward with foreclosure and attempted to obtain an equitable lien against the house. *Fishbein*, 619 So.2d at 269. Mrs. Fishbein argued that the homestead exemption barred imposing an equitable lien because she was an innocent party. The Florida Supreme Court, however, upheld the bank's position:

> [T]he court below was not so concerned with the constitutional language as it was with its belief that an equitable lien could not be imposed because Mrs. Fishbein was not a party to the fraud. Yet, there was no fraud involved in either *La Mar* or *Sonneman*. In those cases, the equitable liens were imposed to prevent unjust enrichment.

shied away from refinancing condos in southern Florida, but the condominium is no longer worth $350,000. Appraisers valued the condominium at $260,000 in September 2008 and the average appraisal price dropped to $205,000 in November 2009. After searching for several weeks the receiver found only one buyer for $175,000.

*Id.* at 270.  While Mrs. Fishbein committed no wrongdoing, she was not entitled to a windfall:

> There is competent and substantial evidence to support the finding that Mrs. Fishbein stands in no worse position than she stood before the execution of the mortgage.  When the bank made its loan, one of the prior mortgages was already overdue.  Mr. Fishbein testified that by that time he had no other assets which could be used to pay off the preexisting liens, and Mrs. Fishbein testified that she had no funds with which to pay them . . . .  Mrs. Fishbein is not entitled to a $930,000 windfall.  *The homestead exemption is intended to be a shield, not a sword.*

*Id.* at 270-71 (emphasis added).  *See also Havoco*, 790 So.2d at 1024 (*Fishbein* held that the bank "should be entitled to a lien under the doctrine of equitable subrogation as its loan proceeds were used to satisfy the prior liens against the home.").  Palm Beach was entitled to an equitable lien to the extent that the proceeds were used to pay the preexisting mortgages, and Mrs. Fishbein was placed in the same position as if Mr. Fishbein had never committed the fraud.

Consequently, under Florida law, to impose an equitable lien on a homestead, three conditions must exist:  (1) the owner used fraudulently obtained funds to purchase or retire a mortgage interest in the homestead; (2) the owner was unjustly enriched; and (3) the owner would be no worse off if the court imposed an equitable lien in favor of the fraud victim.  Each prong is met here.  The funds were fraudulently obtained by Hudgins.  Silette did not earn the money and was unjustly enriched.  Silette will not be worse off; imposing an equitable lien for $328,000 puts Silette in the same position as if she had never met George Hudgins.

Silette and the dissent argue that *Fishbein* is inapplicable, because in that case, Mr. Fishbein invested the money into the homestead and then transferred the homestead to his wife, creating direct links between the fraud and the home and the fraudfeasor and his home.  In the present case, Hudgins did not spend the money on the home, but gave it to Silette.  Without direct links between the

fraud and the homestead, according to Silette and the dissent, the court cannot impose an equitable lien.  Silette notes that no equitable lien has ever been imposed in such a circumstance and that some courts phrase the rule to require culpability in the fraud.  *In re Johnson*, 336 B.R. 568, 572 (Bankr. S.D. Fla. 2006) (citing *Havoco*, 790 So.2d at 1028).  Further, the dissent would not "expand" the exemption to the homestead exception to include circumstances where the fraudfeasor is not directly connected to the homestead.

Although perhaps equitably compelling, this line of reasoning has been rejected by the Florida Supreme Court.  The Florida appellate court made a very similar argument in the *Fishbein* case:

> *[C]ourts may impose equitable liens against homestead real property only where the plaintiff can establish some fraudulent or otherwise egregious conduct on the part of the beneficiary of the homestead protection. Isaacson v. Isaacson*, 504 So.2d 1309, 1310-1311 (Fla. 1st DCA 1987).  Limiting the imposition of equitable liens against homestead property to cases where the plaintiff has established fraud or other egregious conduct on the part of the beneficiary of the protection is "consistent with the well-established principle that exceptions from the constitutional exemption from forced sale are to be strictly construed."  Id. at 1311.
>
> . . .
>
> Based on *Isaacson*, we conclude that the only basis on which a court may impose an equitable lien is where there is fraud or egregious conduct by the party claiming the homestead exemption. Therefore, *we hold that the trial court erred when it imposed an equitable lien against the homestead property because the Bank failed to establish fraudulent conduct on Mrs. Fishbein's part.*

*Fishbein v. Palm Beach S&L Ass'n*, 585 So.2d 1052, 1055-56 (Fla. 4th DCA 1991) (emphasis added).  This is essentially the dissent's position, but the Florida Supreme Court addressed and rejected this reasoning.  The focus is on unjust enrichment, not fraud:

> Thus, it is apparent that where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of article X, section 4.  However, the [Florida appellate court] was not so concerned with the

constitutional language as it was with its belief that an equitable lien could not be imposed because Mrs. Fishbein was not a party to the fraud. Yet, there was no fraud involved in either *La Mar* or *Sonneman*. In those cases, *the equitable liens were imposed to prevent unjust enrichment.*

*Fishbein*, 619 So.2d at 270 (emphasis added). The Florida Supreme Court could not be clearer: a party's innocence in the fraud is not relevant to whether the court can impose an equitable lien. The only relevant factor is whether the party is unjustly enriched by fraudulently obtained funds. The Eleventh Circuit reached the same conclusion. *In re Financial Federated*, 347 F.3d at 890 ("Unjust enrichment can be the basis for the assertion of an equitable lien."). If the court does not impose an equitable lien, Silette will receive a $328,000 windfall. As Florida has not chosen to protect the innocent beneficiary of fraudulently obtained proceeds, the federal court may not do so.

Although not raised by Silette or the dissent, another way to analyze this somewhat novel case is to consider whether Hudgins's Ponzi scheme victims are more like the defrauded mortgage lender in *Fishbein* (who thought it was getting a mortgage on the homestead) or the judgment creditor in *Havoco* (whose hope of payment vanished when the judgment debtor elected to protect his assets by purchasing an exempt homestead). The key factors, we believe, are that the fraudulently obtained funds can be traced directly into the homestead. *Havoco* carefully identified this situation — the *Fishbein* case — as the paradigmatic narrow exception to Florida's otherwise generous homestead laws. *See Havoco*, 790 So.2d at 1024-28 (discussing cases). This case is an application, not an expansion, of *Havoco's* principles.

**B.**

Silette also challenges the district court's order requiring her to transfer title to the condominium, solely on the basis that the court failed to balance the

equities before it "dispossessed" her of her home.[3]  She cites no Florida case in which the imposition of an equitable lien on the homestead, once having been found permissible, was denied upon a balancing of the equities.  Such further balancing, in fact, would probably be inconsistent with *Fishbein* and its related cases, which authorize equitable intervention in favor of creditors where fraudulently obtained funds were used to purchase, invest in, or improve a homestead.  *See Havoco*, 790 So. 2d at 1024-1027 (discussing cases).  The remedy in these cases is the equitable lien, not the question whether further "equities" support an equitable lien.

Assuming *arguendo* that Silette's personal situation was to be balanced against the harm to Hudgins's victims, the district court adequately performed this function, in light of the briefing before him, on two occasions.  In June 2009, his order granting the receiver's motion to impose an equitable lien thoroughly analyzed relevant caselaw, including Silette's proffered defense of ignorance as to the source of the funds.  In November, his order balanced the equities before

---

[3]Contrary to what occurred here, where the court simply ordered Silette to execute a deed, and she complied, foreclosure does not automatically follow the imposition of an equitable lien, but instead requires its own proceeding.  *See In re Financial*, 347 F.3d at 893 (imposing an equitable lien and holding that the defendants could not use the homestead exemption to prevent a foreclosure to enforce the lien); *Babbit Electronics, Inc. v. Dynascan Corp.*, 915 F. Supp. 335, 338 (S.D. Fla. 1995) (imposing an equitable lien, but staying foreclosure proceedings for thirty days); *In re Mesa*, 232 B.R. 508, 515 (Bankr.  S.D. Fla. 1999) (imposing an equitable lien and holding that the defendants could not use the homestead exemption to prevent a foreclosure to enforce the lien).  A creditor who obtains an equitable lien must undertake a foreclosure in compliance with the terms of the contract and applicable law. *Kubany v. Woods,* 622 So.2d 22, 24 (Fla. Dist. Ct. App. 1993).  Foreclosure may not occur absent a default by the debtor. *Meredith v. Long*, 119 So. 114, 115 (Fla. 1928); *Pezzimenti v. Cirou*, 466 So.2d 274, 276 (Fla. Dist. Ct. App. 1985) ("The general rule in Florida is that there must be impairment of the security before foreclosure is granted. . . .").  Silette, however, makes no argument related to the failure of the court to allow a foreclosure sale; the point is waived. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

approving a sale of the condo and rejecting Silette's motion to stay. Silette now pleads that she has lost her job and her homestead and that she might have been able to refinance her condo or secure a purchaser for a higher price and settle with the receiver. There is no evidence, however, that Silette undertook ameliorative actions to save her ownership interest from June 2008, when she was notified of the receiver's claim, until the condo was sold 18 months later. She lived in the mortgage-free condo for a year. As the district court found, Silette was no worse off from the imposition of the equitable lien than she was as a mortgagor. For these reasons, the district court did not abuse its discretion in imposing an equitable lien. *SEC v. Forex Asset Mgmt, LLC*, 242 F.3d 325, 331 (5th Cir. 2001).

## IV. CONCLUSION

Because Silette used fraudulently obtained funds to retire the condominium's mortgage, the district court's imposition of an equitable lien was proper under Florida law. The judgment is **AFFIRMED** and the stay of sale is **VACATED**.

JENNIFER WALKER ELROD, Circuit Judge, dissenting.

The question before us is whether Florida's broad constitutional homestead exemption protects Wendy Silette's home from being the subject of an equitable lien and foreclosure sale to benefit other persons who were defrauded by a third party. Silette is an innocent third party who, after receiving a gift of cash from George Hudgins, used that cash to pay off a mortgage on her homestead. Both parties concede that there is no evidence in the record suggesting Silette had involvement with or knowledge of Hudgins's fraudulent activities. Silette's interests in retaining her home are pitted against those of other innocent parties—the investors who were defrauded of thousands of dollars in investments as a result of Hudgins's Ponzi scheme. Because this case calls us to interpret a narrow fraud exception to the Florida Constitution's famously broad homestead exemption, and the Florida Supreme Court has never held that the exception is applicable against a homestead under these circumstances, I would hold that Silette's home cannot be sold in order to bring some measure of recoupment to Hudgins's investors.

The record establishes that Silette is, and has always been, the sole owner of the home at issue. At the time Silette met Hudgins, she had purchased the home in her own name, and she had established equity in the unit. It is equally clear that Hudgins, the fraudfeasor, has absolutely no connection to the home. He never lived in the home, and he has never transferred money into the home or established an ownership interest in the home. However, because Silette accepted a cash gift from Hudgins which she then used to pay down her mortgage, she stands to lose her home and all equity which she had accrued. This result runs afoul of the protections provided to Silette's home by the Florida Constitution.

Article X, Section 4 of the Florida constitution provides that the homestead

shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person.

Florida courts have repeatedly held that the homestead exemption is "to be liberally construed in the interest of protecting the family home." *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1020 (Fla. 2001).

Article X contains no explicit exception permitting liens against Florida homesteads on the basis of fraud. However, the Florida Supreme Court has created a narrow exception to the homestead provision in the Florida Constitution in order to prevent unjust enrichment and has guarded against further encroachments upon the constitutional homestead exemption by directing that courts should apply "a liberal, nontechnical interpretation of the homestead exemption and strict construction of the exceptions to that exemption." *Butterworth v. Cacciano*, 605 So. 2d 56, 61 (Fla. 1992); *see also Quigley v. Kennedy & Ely Ins., Inc.*, 207 So.2d 431, 432–33 (Fla. 1968) (declining to find an exception to Florida's constitutional homestead exemption on the basis of preventing debt-circumvention, and holding that a parcel of land adjacent to the homestead property, which was purchased after the entry of judgment against the owner, was nevertheless exempt from levy and execution as being part of the homestead); *In re Lazin*, 221 B.R. 982, 988 (Bankr. M.D. Fla. 1998).

Indeed, in each case where the Florida Supreme Court has upheld the imposition of an equitable lien against an innocent owner's homestead, two conditions existed, neither of which are present here: (1) the fraudfeasor personally used fraudulently acquired funds to improve the homestead or pay down the debt on the homestead, and (2) the fraudfeasor possessed an ownership interest in the property at the time of the transfer or mortgage acquisition. *See*

*Palm Beach Savings & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 268–71 (Fla. 1993); *see also In re Fin. Fed. Title & Trust, Inc.*, 347 F.3d 880, 890–91 (11th Cir. 2003).  In *Fishbein*, the Florida Supreme Court permitted a bank to impose an equitable lien on a home solely owned by Ms. Fishbein—an innocent party.  However, the house had been in the common ownership of both Mr. and Ms. Fishbein at the time that Mr. Fishbein fraudulently obtained a mortgage on that homestead by forging her signature.  Even though Ms. Fishbein was innocent and obtained sole possession of the house following the divorce, the Florida Supreme Court upheld the lien to prevent unjust enrichment resulting from Mr. Fishbein's illegal obtainment of the mortgage. *Fishbein*, So.2d at. at 269–70.  Likewise, in *In re Financial Federated Title and Trust, Inc.*, the Eleventh Circuit affirmed a bankruptcy court's order imposing an equitable lien against a homestead in a case in which the perpetrator's wife was unaware that the funds used to purchase the home had been fraudulently acquired in her husband's Ponzi scheme. *See id.* 890–91.  But there, both the husband and wife used the fraudulently obtained funds to purchase the home, and the purchase enabled the fraudfeasor to become an owner of the home. *See id.* at 884.

There is no question that the conditions in *Fishbein* and *In re Financial Federated Title & Trust* are not present here.  In this instance, it was Silette—not the fraudfeasor—who used the funds to pay off the mortgage on her homestead.  As such, there is no danger that the homestead exemption might be "applied as to make it an instrument of fraud or imposition upon creditors," the very concern that motivated the court to engraft the fraud exception onto Article X, Section 4. *Id.* at 1020 (quoting *Milton v. Milton*, 63 Fla. 533 (1912)).  And unlike in the cases the majority relies upon, in which the fraudfeasor owned the homestead at the time of the fraudulent transfer or as a result of that transfer, Hudgins never had any ownership interest in Silette's condominium.  The Florida Supreme Court has never authorized the imposition of an equitable lien upon a homestead based on the fraudulent endeavors of a person who never

13

actually owned the homestead.

In light of the Florida Supreme Court's admonition that its "equitable lien jurisprudence should not be read too broadly" to enlarge the fraud exception, *Havoco*, So. 2d at 1027, we should be reluctant to expand a strictly limited, equitable exception to the Florida Constitution's homestead exemption without clear guidance from the Florida Supreme Court. I would hold that Article X, Section 4 of the Florida Constitution does not permit the imposition of an equitable lien on Silette's homestead. Accordingly, I respectfully dissent.