**Opinion issued August 9, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01103-CV

————————————

**JAMES W. TRENZ AND TERRANE ASSOCIATES, INC.,**
**Appellants**

**V.**

**PETER PAUL PETROLEUM COMPANY AND POSSE ENERGY, LTD.,**
**Appellees**

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2005-02964**

**O P I N I O N**

James W. Trenz and Terrane Associates, Inc. (collectively, Trenz) appeal

from the trial court's denial of a special appearance in this declaratory judgment

action brought by Peter Paul Petroleum Company and Posse Energy, Ltd.

(collectively, Peter Paul) to resolve disputes over the calculation and payment of a reversionary interest in an Oklahoma oil and gas lease. Trenz argues that the trial court lacks personal jurisdiction over him and, in the alternative, lacks subject-matter jurisdiction over this dispute because it requires the adjudication of interests in real property located in another state. We hold that Trenz has waived any objection to the trial court's personal jurisdiction and affirm the trial court's order denying Trenz's special appearance. We do not reach Trenz's challenge based on the location of certain real property because he did not raise it in his special appearance in the trial court, and it is outside the scope of this interlocutory appeal under section 51.014(a)(7) of the Civil Practice and Remedies Code.[1]

## Background

James Trenz, a non-resident of Texas, is the sole owner of Terrane Associates, a Delaware corporation with its principal place of business located outside of Texas. Trenz is in the oil and gas consulting business. In 1990, Trenz and Glen Rupe formed a joint venture ("ROC, et al.") to operate certain Oklahoma oil and gas wells owned by Peter Paul, a Texas oil and gas company.[2] Through

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West 2011); TEX. R. CIV. P. 120a.

[2] Trenz and Rupe disputed the nature of their business arrangement in separate litigation in Oklahoma. Pursuant to a settlement agreement between the parties, an Oklahoma court entered judgment in 2004 declaring that Trenz had a contract with Rupe and Rupe Oil Company, Inc. "to form a joint venture entitled 'ROC, et al.'"

Rupe Oil Company, Inc.,[3] Rupe entered into an operating agreement with Peter Paul, under which ROC, et al. would operate the Oklahoma wells. Under the operating agreement, Rupe, individually, agreed to purchase a five percent interest in the wells (with Peter Paul purchasing the remaining ninety-five percent). The agreement also granted ROC, et al. a "ten percent reversionary interest at payout of the acquisition price, closing costs, additional drilling and workover costs, and allocated [Peter Paul] overhead not to exceed [ten percent] of net cash flow." Essentially, ten percent of Peter Paul's ninety-five percent interest in the wells would pass to ROC, et al. once income from the wells exceeded startup costs.

ROC, et al. operated the Oklahoma wells for approximately one year before Peter Paul notified ROC, et al. that it would replace ROC, et al. with a new operator. ROC, et al. retained its contractual right to the ten percent reversionary interest. Disputes arose between Trenz and Rupe regarding their business arrangement and between Trenz and Peter Paul regarding calculation of the reversionary interest payout. Litigation in Oklahoma resolved the dispute between

---

[3] By "through Rupe Oil Company, Inc.," we do not imply any determinations about the nature of the agreement or the parties to the agreement. We only reference that the agreement is on letterhead for "Rupe Oil Company, Inc."; it states that it was "made and entered into . . . by and between . . . Rupe Oil Company, Inc. . . . and Peter Paul Petroleum Company"; and it has signature blocks for "Peter Paul Petroleum Company" and "Rupe Oil Company, Inc."

The signature block for "Rupe Oil Company, Inc." is signed by Rupe. Rupe and Rupe Oil Company are Kansas-based.

Trenz and Rupe, resulting in a judgment that Trenz and Rupe were joint venturers, each with a one-half interest in the ten percent reversionary interest from Peter Paul.[4] Peter Paul filed this declaratory judgment action seeking various declarations regarding Trenz's rights and obligations with respect to the reversionary interest payout and a 1997 agreement between Peter Paul and Rupe regarding calculation of the payout.

Trenz specially appeared, challenging the trial court's personal jurisdiction over him. The trial court ultimately overruled the special appearance, and this appeal followed.

## Personal Jurisdiction

Trenz argues that Peter Paul failed to plead sufficient jurisdictional facts to bring Trenz within the Texas long-arm statute and failed to prove sufficient minimum contacts to establish Texas courts' personal jurisdiction over Trenz. Peter Paul responds that Trenz waived any challenge to personal jurisdiction by generally appearing in the case and that it has demonstrated sufficient contacts to establish jurisdiction over Trenz. "Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo." *Zinc*

---

[4] Peter Paul eventually became a party to the Oklahoma litigation and impleaded the disputed half of the reversionary interest (five percent) payout it had calculated, after paying the other half (five percent) to Rupe. Peter Paul's participation in the litigation was limited by the Oklahoma court, and the parties dispute what issues, as between Peter Paul and Trenz, were adjudicated in the litigation.

4

*Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

## A. Waiver

Unlike subject-matter jurisdiction, which concerns a court's jurisdiction to hear a case and cannot be waived, personal jurisdiction concerns a court's jurisdiction over a particular party and can be waived. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006). A party waives the absence of personal jurisdiction by making a general appearance in the case or by failing to timely object to the court's jurisdiction. *Id.* A party enters a general appearance when he (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by his acts that an action is properly pending, or (3) seeks affirmative action from the court. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (holding that filing of rule 11 agreement and hearing of jurisdiction-related discovery dispute did not waive special appearance).

Rule 120a of the Texas Rules of Civil Procedure recognizes a procedure for a "special appearance"—a means by which a party may make a limited appearance in the case for the purpose of challenging personal jurisdiction without making a general appearance that will waive the challenge. *See* TEX. R. CIV. P. 120a; *First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 776 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). A party availing himself of rule 120a's special

5

appearance procedure must strictly comply with the rule's terms because failure to do so results in waiver. *See* TEX. R. CIV. P. 120a(1) ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance."); *First Oil PLC*, 264 S.W.3d at 776; *see also Silbaugh v. Ramirez*, 126 S.W.3d 88, 93 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Rule 120a requires strict compliance."); *SBG Dev. Servs., L.P. v. Nurock Group, Inc.*, No. 02-11-00008-CV, 2011 WL 5247873, at *2–4 (Tex. App.—Fort Worth Nov. 3, 2011, no pet.) (mem. op.) ("Strict compliance with rule 120a is required[.]"). Rule 120a dictates the order in which pleadings may be filed with respect to the filing of a special appearance— the due-order-of-pleading requirement; it also dictates the order in which motions may be heard with respect to a special appearance—the due-order-of-hearing requirement. *See* TEX. R. CIV. P. 120a; *First Oil PLC*, 264 S.W.3d at 776.

### 1. The parties' arguments

Peter Paul asserts that Trenz failed to comply with the due-order-of-hearing requirement, which mandates that a special appearance "be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." TEX. R. CIV. P. 120a(2). Specifically, Peter Paul asserts that, before obtaining a ruling on his special appearance, Trenz obtained hearings on a motion to dismiss, a motion for summary judgment, and a motion for continuance of a summary judgment hearing—each of which sought relief on non-jurisdictional grounds.

6

Thus, Peter Paul contends, Trenz made general appearances in the suit and waived any objection to personal jurisdiction.

Trenz responds that, although the trial court did not rule on his special appearance at the special appearance hearing in 2005, the trial court indicated that it intended to deny the special appearance. Trenz asserts that he "relied on the [trial] court's statements and proceeded under the court's implicit denial of the special appearance" in pursuing his subsequent motions. He also asserts that noticing a hearing for a summary judgment or continuance motion is insufficient to waive a special appearance, citing *Minucci v. Sogevalor*, 14 S.W.3d 790, 800 (Tex. App.—Houston [1st Dist.] 2000, no pet.), and *Silbaugh v. Ramirez*, 126 S.W.3d at 93. Trenz concludes that he "filed [his] special appearance first, filed other motions strictly subject to the special appearance, and argued subsequent motions after the trial court implicitly denied Trenz's special appearance at the December 9, 2005 hearing." Therefore, Trenz asserts that he "complied with the due order of the pleading and hearing requirements under Texas Rule of Civil Procedure 120a, and no waiver occurred."

**2.     The pertinent procedural history**

Trenz answered this lawsuit subject to his special appearance. In May 2005, after filing his special appearance, Trenz moved for a determination that Texas law did not govern the claims in this case and to dismiss the claims against him on

7

various grounds—the doctrine of comity, full faith and credit to a foreign judgment, and statute of limitations. Trenz did not condition his request for dismissal on denial of his special appearance or designate the motion as filed "subject to" his special appearance. Peter Paul attempted to set Trenz's motion to dismiss for hearing on various dates in July 2005; Trenz ultimately re-set the hearing for July 29, 2005.

In November 2005, Trenz moved for summary judgment but expressly made his request for summary judgment and other relief subject to his special appearance. Trenz set his special appearance for hearing on December 9, 2005 and his motion for summary judgment for hearing on December 28, 2005. In the meantime, Peter Paul had also moved for summary judgment, setting its motion hearing on December 9. Subject to his special appearance, Trenz moved to continue the hearing on Peter Paul's summary judgment motion until December 28 so that both summary judgment motions could be heard at the same time; Trenz set the motion for continuance for hearing on December 2. Peter Paul then agreed to re-set its summary judgment hearing for December 28, and Trenz withdrew his motion for continuance and request for hearing on the motion.

On December 9, the court conducted a hearing on Trenz's special appearance but did not issue a ruling. On December 28, the trial court conducted a hearing on the parties' summary judgment motions. The court issued an order

8

stating that it would "defer its ruling at this time on all pending motions in this case, including [the motions for summary judgment] and Trenz's Special Appearance" to allow the Oklahoma courts of appeals "an opportunity to review related issues raised by the parties" in the Oklahoma litigation. This order was signed "AGREED" by counsel for both Peter Paul and Trenz. After this order, the record is silent for more than two years.

Activity resumed when Peter Paul set both parties' summary judgment motions for hearing in May 2008. Peter Paul amended its pleading, and Trenz filed an amended motion for summary judgment. Unlike his earlier motion for summary judgment, Trenz did not designate this motion or the relief requested therein as "subject to" his special appearance. Trenz's amended motion for summary judgment makes no reference to his special appearance or the trial court's purported lack of personal jurisdiction over Trenz. Trenz set his summary judgment motion for hearing on August 29, 2008. Trenz also filed an amended answer, which he designated as subject to his special appearance.

The record falls silent again until December 2009, at which time Trenz set a status conference for December 30, 2009. Also on December 30, Trenz filed his expert designations.

The record is then silent until August 2010, when the trial court issued a docket control order. Trenz subsequently set a telephonic status conference for

9

September 16, 2010. In October 2010, the trial court issued a notice of trial setting for November 19, 2010. Trenz again filed expert designations in October 2010. In November 2010, the trial court reset the trial for February 2011. Trial did not go forward at that time, and another status conference was set for May 6, 2011. A new docket control order then set the case for trial in October 2011.

The record does not contain an order from the trial court denying Trenz's motion for summary judgment, but in September 2011, Trenz moved the trial court to reconsider his summary judgment motion. Trenz set his motion to reconsider for hearing on September 30, 2011. On September 22, 2011, Trenz filed a motion to stay the case, subject to his special appearance, which he also set for hearing on September 30. After filing the motion to stay, but before the hearing on the motion to stay, Trenz moved for leave to have the trial court consider his motion for reconsideration of his summary judgment motion.

At Trenz's request, the trial court agreed to consider Trenz's motion to reconsider his summary judgment motion on October 3, 2011.

On October 25, 2011, the trial court issued on a new docket order, re-setting the trial for January 9, 2012. In November 2011, Trenz moved for pro hac vice admission of an attorney to appear before the court on his behalf at trial; the trial court granted the pro hac vice motion in December 2011.

Finally, in December 2011, Trenz set his special appearance for another hearing on January 6, 2012—three days before the scheduled trial setting. After the trial court sent notice of a January 6, 2012 docket call for the January 9, 2012 trial setting, Trenz moved for a ruling on his special appearance or, alternatively, an emergency oral hearing. In the motion, Trenz noted that the trial court "did not issue a ruling" on his special appearance at the December 2005 hearing and that the court "ha[d], to date, not ruled." Trenz therefore requested a ruling "[i]n anticipation of trial." The trial court then entered an order overruling Trenz's special appearance.

### 3. Trenz did not comply with the due-order-of-hearing requirement

Generally, if a defendant obtains a hearing on a motion that seeks affirmative relief unrelated to his special appearance before he obtains a hearing and ruling on his special appearance, he has entered a general appearance and thus waived any challenge to personal jurisdiction; but if a defendant obtains a hearing on a motion that only seeks relief appurtenant to his special appearance, it may not result in waiver. *Compare Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 134 (Tex. App.—Dallas 2011, no pet.) (holding that party waived special appearance); *Landry v. Daigrepont*, 35 S.W.3d 265, 267–68 (Tex. App.—Corpus Christi 2000, no pet.) (same); *SBG Dev. Servs.*, 2011 WL 5247873, at *2–4 (same), *with Trejo*, 142 S.W.3d at 306 (holding that defendant did not waive special appearance);

11

*Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998) (same); *First Oil PLC*, 264 S.W.3d at 777, 781 (same). The test for whether a party has made a general appearance by obtaining a hearing on another motion before obtaining a ruling on his special appearance is whether the other motion sought "affirmative relief inconsistent with [his] assertion that the district court lacked jurisdiction." *Dawson-Austin*, 968 S.W.2d at 323.

Trenz does not contend that the hearings he obtained on his motions to dismiss and for summary judgment were necessary to, inextricably intertwined with, or otherwise related to, his special appearance. Nor does he deny that they sought affirmative relief from the trial court inconsistent with his assertion that the trial court lacked jurisdiction over him. *See Klingenschmitt*, 342 S.W.3d at 134 (holding that party sought affirmative relief by filing motion to dismiss and violated due-order-of-hearing requirement by having motion to dismiss and motion to reconsider dismissal heard before special appearance); *SBG Dev. Servs.*, 2011 WL 5247873, at *2–4 (holding that defendant waived special appearance by having motion to strike pleadings—which requested dismissal of claims on basis of failure to comply with order on special exceptions—heard before special appearance at hearing).

Though Trenz asserts that the trial court foreshadowed its ruling and that he relied on that "implied" ruling, Trenz admits that the trial court did not rule on his

special appearance at the December 2005 hearing—otherwise, this interlocutory appeal would be years beyond its filing deadline. Thus, it is undisputed that Trenz requested and obtained hearings on his motion to dismiss, original motion for summary judgment, and amended motion for summary judgment before the trial court heard and determined his special appearance. *See* TEX. R. CIV. P. 120a(2); *see also Milacron Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875–76 (Tex. App.—Texarkana 2008, no pet.) ("Rule 120a requires that the specially appearing defendant timely request a hearing, specifically bring that request to the trial court's attention, and secure a ruling on the preliminary question of personal jurisdiction.").

The appellate record demonstrates that Trenz did not move for the trial court to issue a ruling on his special appearance until December 2011—six years after the hearing—and never objected to the trial court's failure to rule on the special appearance sooner.[5] By obtaining and participating in hearings on requests for affirmative relief from the trial court before obtaining a ruling on his special appearance, Trenz violated rule 120a and waived his challenge to personal jurisdiction. *See* TEX. R. CIV. P. 120a; *Klingenschmitt*, 342 S.W.3d at 134;

---

[5] Generally, a party may preserve error on an issue on which the trial court has not ruled by requesting a ruling and objecting to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a)(2)(B).

*Milacron*, 262 S.W.3d at 875–76; *Landry*, 35 S.W.3d at 267–68; *SGB Dev. Servs.*, 2011 WL 5247873, at \*3.

Trenz's participation in the prosecution of this action, along with the inordinate delay in obtaining a ruling, is more extensive than that of the defendants in *Minucci* and *Silbaugh*, and evidences an intent to proceed in the Texas case. The *Minucci* court held that the defendant challenging personal jurisdiction did not waive his challenge by "mere[ly] filing [a] notice of oral hearing" on his motion to dissolve a writ of garnishment. 14 S.W.3d at 800. The *Minucci* defendant did not proceed with the hearing on his request for affirmative relief before obtaining a ruling on its special appearance, as Trenz did here. *See id. Silbaugh* is also distinguishable. In *Silbaugh*, the defendant set two motions for hearing: a motion to quash discovery and a motion to strike an intervening party. 126 S.W.3d at 93. Like in *Minucci*, the defendant in *Silbaugh* did not have her motions heard or ruled on before her special appearance. *Id.* at 93−94. Additionally, the motion to quash was a discovery dispute—rule 120a expressly contemplates jurisdictional discovery before a special appearance hearing, TEX. R. CIV. P. 120a(3)—and the motion to strike was based on the trial court's lack of jurisdiction. *Silbaugh*, 126 S.W.3d at 93−94. Thus, Trenz's reliance on *Minucci* and *Silbaugh* is misplaced.

Because Trenz waived his special appearance, we overrule his first issue.

14

**The Local Action Doctrine**

In addition to challenging the trial court's denial of his special appearance, Trenz raises a new issue on appeal, which he classifies as a challenge to the trial court's subject-matter jurisdiction. Specifically, Trenz argues that the trial court lacks jurisdiction over this case because it involves an interest in real property, which must be litigated in the place where the real property is located. The principle Trenz invokes is sometimes referred to as the "local action doctrine."[6]

**A.    The parties' arguments**

Trenz's subject-matter-jurisdiction argument is as follows:

> Peter Paul seeks a Texas court to adjudicate rights associated with a contract that conveyed a working interest in oil and gas properties in Oklahoma. A working interest is an oil and gas right that is an interest in real property. Texas courts generally prohibit adjudicating rights in real property located in other states. Consequently, Texas courts lack subject-matter jurisdiction over this dispute[.]

(internal citations omitted). Trenz cites *Trutec Oil & Gas, Inc. v. Western Atlas International, Inc.*, 194 S.W.3d 580, 583, 591 (Tex. App.—Houston [14th Dist.] 2006, no pet.), to support this argument.

---

[6]    The local action doctrine is founded on the principle that "[l]ocal actions are in the nature of suits *in rem*, and are to be prosecuted where the thing on which they are founded is situated." *Casey v. Adams*, 102 U.S. 66, 68, 26 L. Ed. 52 (1880). In *in personam* proceedings, the doctrine requires that certain claims relating to real property be tried where the real property is situated. *See, e.g.*, *Crawford v. Silette*, 608 F.3d 275, 277−78 (5th Cir. 2010).

Peter Paul responds that Trenz's subject-matter-jurisdiction argument is, in fact, a "local action rule" argument, which is not jurisdictional in nature. Therefore, Peter Paul contends, Trenz waived this argument by failing to raise it in the trial court. Peter Paul further responds that the local action doctrine does not apply to this action, which is *in personam* rather than *in rem*.[7]

Neither party addresses whether this Court has jurisdiction to consider Trenz's local-action-doctrine challenge to the trial court's jurisdiction in this interlocutory appeal. Nevertheless, we have an obligation to examine our own interlocutory jurisdiction *sua sponte*. *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 741 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam)). Thus, we must first determine whether Trenz's local-action-doctrine challenge to the trial court's jurisdiction falls within section 51.014(a)(7)'s

---

[7] Peter Paul asserts that "[t]he Texas Supreme Court has already rejected an attempt to apply the local action rule to a case just like this," citing *Smith v. Hall*, 219 S.W.2d 441, 444 (Tex. 1949). According to Peter Paul, "*Smith* rightly holds that the local action rule does *not* apply to 'a suit for specific performance of a contract to convey an interest in land, or for damages for breach of such contract.' That is precisely this case, so the local action rule does not apply." (internal citations omitted). *Smith*, however, was a venue dispute. 219 S.W.2d at 442−44. The Supreme Court made no reference to the local action rule—generally, a forum doctrine—in deciding that the suit for specific performance on a royalties agreement did not fall within a mandatory venue provision governing certain real-property-related actions. *Id.* at 444.

authorization for interlocutory appeal. For the reasons discussed below, we conclude that it does not.

## B. We do not have jurisdiction to hear Trenz's local-action-doctrine challenge in this interlocutory appeal

Generally, Texas courts of appeals have jurisdiction over final judgments and orders only. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001). In section 51.014(a), the Legislature statutorily extended the courts of appeals' jurisdiction to certain, specified interlocutory orders. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (West 2011). Pursuant to the Legislature's intent, we strictly construe section 51.014(a) as a narrow exception to the general rule that a trial court's interlocutory orders are not appealable. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 841 (Tex. 2007); *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 71 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

### 1. Our jurisdiction under section 51.014(a)(7) is limited to orders granting or denying a rule 120a special appearance

Trenz filed this interlocutory appeal under section 51.014(a)(7) of the Civil Practices and Remedies Code.[8] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7). Thus, this Court has interlocutory jurisdiction over this appeal only to the extent such jurisdiction is expressly granted by section 51.014(a)(7). *Id.*; *see also Bally Total Fitness*, 53 S.W.3d at 355; *Qwest Communications Corp. v. AT &*

---

[8] The parties have not invoked any other statutory basis for interlocutory appeal.

*T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) ("An appellate court lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes an exception to the general rule, which is that appeals may only be taken from final judgments."). Section 51.014(a)(7) grants courts of appeals jurisdiction over a district court's interlocutory order that "grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

### 2.    Rule 120a is a vehicle for challenging personal jurisdiction

Rule 120a provides that "a special appearance may be made by any party . . . for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." TEX. R. CIV. P. 120a. The second part of this language—"on the ground that such party or property is not amenable to process issued by the courts of this State"—demonstrates that rule 120a references challenges to personal jurisdiction. *See* TEX. R. CIV. P. 120a; *see also Steve Tyrell Prods., Inc. v. Ray*, 674 S.W.2d 430, 434 (Tex. App.—Austin 1984, no writ) (observing, in context of *in personam* action, that this language makes it "readily apparent that Rule 120a was designed only to allow a defendant to challenge the *power* of the state court" to "subject an unwilling nonresident defendant to *in*

18

*personam* jurisdiction"—i.e., whether a sufficient relationship exists between nonresident defendant and forum state).

### 3. To the extent Trenz challenges the trial court's subject-matter jurisdiction, that challenge falls outside the scope of section 51.014(a)(7)

The local action doctrine is a unique creature of the common law that courts have, at times, applied in both venue and jurisdictional (personal and subject-matter) analyses.[9] We need not determine whether and how that doctrine applies to this case at this time because we hold that Trenz's local-action-doctrine challenge falls outside the scope of the interlocutory appeal authorized under section 51.014(a)(7)—the only basis for interlocutory appeal invoked by Trenz in this appeal.

---

[9]    *E.g.*, *Livingston v. Jefferson*, 15 Fed. Cas. 660, 664 (C.C.D. Va. 1811) (applying local action rule to hold that Virginia court lacked jurisdiction over claim for trespass to land located in Louisiana); *Casey*, 102 U.S. at 68, 26 L. Ed. 52 (holding that former federal venue statute applied to transitory actions only and did not displace local action rule); *Crawford v. Silette*, 608 F.3d 275, 277−78 (5th Cir. 2010) ("The local action doctrine holds that 'federal and state courts lack jurisdiction over the subject-matter of claims to land located outside the state in which the court sits.'") (citing *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987)); *Tex. & P. Ry. Co. v. Gay*, 26 S.W. 599, 607−09 (Tex. 1894) (holding that Louisiana courts lacked jurisdiction to adjudicate possession of land situated in Texas and stating, "It has sometimes been stated that the principles thus announced furnished simply a technical rule in reference to venue, and that they had no bearing on the more substantial question of jurisdiction, but the language of the great judge is not susceptible of such a construction."), *aff'd*, 167 U.S. 745, 17 S. Ct. 1000 (1897).

To the extent that Trenz invokes the local action doctrine as a challenge to personal jurisdiction, we have held Trenz waived his objection to personal jurisdiction in this action. Moreover, parties must raise objections to personal jurisdiction before the trial court in order to preserve them for appeal, and Trenz did not raise his local-action-doctrine challenge before the trial court. *See State v. C.J.F.*, 183 S.W.3d 841, 852 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that personal-jurisdiction challenges not raised in trial court may not be raised for first time on appeal) (citing TEX. R. APP. P. 33.1); *Reynolds v. Reynolds*, 2 S.W.3d 429, 430 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (same). To the extent Trenz invokes the doctrine as a challenge to venue or subject-matter jurisdiction, it falls outside the scope of his section 51.014(a)(7) appeal; section 51.104(a)(7) only authorizes interlocutory review of a trial court's ruling on personal-jurisdiction challenges brought pursuant to rule 120a. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (authorizing interlocutory appeal from trial court order that "grants or denies the special appearance of a defendant under Rule 120a"); *see also* TEX. R. CIV. P. 120a.

Section 51.014(a)(7) endows us with jurisdiction over appeals from the grant or denial of a party's objection to personal jurisdiction through special appearance under rule 120a. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7); TEX. R. CIV. P. 120a. Trenz has waived his objection to personal jurisdiction, and he did

not raise (nor did the trial court grant or deny) a local-action-doctrine objection to personal jurisdiction in his special appearance. Trenz's local-action-doctrine challenge therefore falls outside the scope of this interlocutory appeal, as authorized by section 51.014(a)(7) of the Civil Practices and Remedies Code.

## Conclusion

We hold that Trenz waived his objection to the trial court's personal jurisdiction. We therefore affirm the trial court's order denying Trenz's special appearance. We do not reach Trenz's local-action-doctrine complaint, which we determine to be outside the scope of this interlocutory appeal, brought pursuant to section 51.104(a)(7) of the Civil Practices and Remedies Code.



Harvey Brown
Justice

Panel consists of Justices Bland, Massengale, and Brown.